STATE of Minnesota, Respondent,

v.

Lawrence Bruce GOULD,
Petitioner, Appellant.

No. CX–95–1273.

Supreme Court of Minnesota.

April 24, 1997.

John M. Stuart, Minnesota State Public Defender, Scott G. Swanson, Assistant State Public Defender, Minneapolis, for Appellant.

John Docherty, Assistant Attorney General, St. Paul, for Respondent.

## OPINION

TOMLJANOVICH, Justice.

This case challenges the use of the *Hernandez* method in calculating defendant Lawrence Gould's criminal history score for the purpose of sentencing him on three separate convictions for sale of heroin to an undercover police officer, which all occurred within the period of one week. We affirm the court of appeals on its determination that the use of the *Hernandez* method was appropriate in this case.

In March 1993, Gould first met an informant and a police officer who were both working undercover. At the time, Gould testified that he had been addicted to heroin his whole life and that he was currently involved in a methadone program. Gould said he was not selling drugs and was attempting to live a drug-free life. On March 16, the informant came to Gould's house and asked if he would set up a sale of heroin for a friend, who was actually an undercover police officer. Initially, Gould said he refused to arrange the deal, but the informant persisted and said he was in need of a fix. The informant also offered to give Gould some heroin and money if he would arrange the deal. Gould agreed to set up the sale and later that day, he met with both the informant and the undercover police officer. The police officer gave Gould $1,200 to buy 2 grams of heroin and Gould kept $100 and some of the heroin for himself as the informant had offered. After the sale, the informant returned to Gould's house with him and together they shot up the heroin Gould had pocketed.

Several days later, the informant suggested that Gould set up another sale with the undercover police officer. Gould agreed to meet with the officer on March 19, at which time the officer gave Gould $1,200 for 2 grams of heroin. Gould pocketed $100 and some of the heroin as the informant had offered. As with the last sale, the informant and Gould returned to Gould's house and shot up the heroin together.

Once again, the informant asked Gould to set up a sale of heroin, and Gould testified that he agreed because he was then addicted to heroin. As with the other two sales, the undercover officer gave Gould $1,200 for 2 grams of heroin, and Gould pocketed $100 and some of the heroin. Once again, Gould and the informant went back to Gould's house to shoot up the heroin. More than a year later, Gould was charged with three counts of controlled substance crime in the third degree. At trial, the judge refused to instruct the jury on the defense of entrapment because Gould failed to give proper notice of that defense to the prosecutor. Consequently, the issue of entrapment was not considered by the jury. Gould was convicted of all three counts of sale of heroin in the third degree in violation of Minn.Stat. § 152.023, subds. 1(1) and 3 (1992). Using the *Hernandez* method to calculate his criminal history score, the trial judge sentenced Gould to concurrent and presumptive sentences of 44 months for Count I, 65 months for Count II, and 68 months for Count III.[1] On appeal to the court of appeals, Gould challenged both the trial court's failure to instruct the jury on the defense of entrapment and the application of the *Hernandez* method in calculating his sentence. The court of appeals affirmed both the conviction and the sentences imposed.

On appeal to this court, Gould argues that the trial court's use of the *Hernandez* method to calculate his criminal history score was inappropriate because his multiple convictions involved a single behavioral incident

1. Although the record lacks any explanation as to how Gould's sentence was calculated, Gould was apparently sentenced for Count I based on a criminal history score of 4.5 and a level VI offense. For Count II, Gould was apparently given an additional 1.5 criminal history points for his first level VI conviction so that he had a score of 6 for the purpose of calculating his sentence for the second offense. Thus, he was sentenced to 65 months for Count II, based on a level VI offense. For Count III, Gould was apparently given another 1.5 criminal history points to reflect his second level VI offense. Gould was thus sentenced to 68 months for Count III, based on a criminal history score of 7.5 and a level VI offense.

under Minn.Stat. § 609.035.[2] The primary purpose of section 609.035 is to protect a defendant convicted of multiple offenses from unfair exaggeration of the criminality of the conduct and to ensure that punishment is commensurate with culpability.[3] *State v. Hartfield,* 459 N.W.2d 668, 670 (Minn.1990) (citation omitted); *State v. Eaton,* 292 N.W.2d 260, 266 (Minn.1980) (citation omitted). Consequently, the *Hernandez* method cannot be used to increase the criminal history score of a subsequent sentence unless the convictions arose from a different course of conduct under section 609.035. *Hartfield,* 459 N.W.2d at 670; *State v. Banks,* 331 N.W.2d 491, 493 (Minn.1983).

Before we address the arguments in this case, a brief discussion of our decision in *Hernandez* is necessary. Prior to *State v. Hernandez,* 311 N.W.2d 478 (Minn.1981), the Minnesota Sentencing Guidelines allowed prior felony convictions to be used in calculating a defendant's criminal history score only if the sentence had been stayed or imposed before the date of sentencing for the current offense. Minnesota Sentencing Guidelines II.B.1 and cmt. II.B.101 (1980).

In *Hernandez,* this court was confronted with a situation in which the defendant was sentenced on one day for three separate convictions that were not part of a single behavioral incident. 311 N.W.2d at 479. We affirmed the trial court's decision to count the first two convictions of attempted burglary and theft in calculating the criminal history score and sentence for the third conviction for escape. *Id.* at 481. We held that the addition of two points to the defendant's criminal history score before sentencing him for the third conviction was proper, although the first two sentences were not imposed before the date of sentencing for the current offense. *Id.* at 479–81.

This court concluded in *Hernandez* that it was proper for the trial court to count the first two convictions in calculating the defendant's sentence for the third conviction because (1) the three convictions were for separate and distinct offenses that did not involve the same victims, and (2) there was no indication that the trial court was trying to manipulate the Guidelines to achieve a substantive result which the Guidelines did not intend. *Id.* at 481. This court noted that, in the interests of judicial economy, the trial court was merely trying to do what the Guidelines allowed to be done in three or more days.[4] *Id.*

▇▇▇▇ Gould challenges the use of the *Hernandez* method to calculate his sentence on two grounds. First, Gould argues that because the controlled substance statutes under which he was convicted allegedly presume that the offender is engaged in the ongoing act of selling drugs, this presumption must apply for the purposes of section 609.035. Although the controlled substance statutes may very well punish offenders for their status as a particular kind of dealer,[5]

---

**2.** On appeal to this court, Gould only challenged the trial court's use of the *Hernandez* method in calculating his sentence. Thus, the issue of entrapment was not before this court.

**3.** Minnesota Statutes section 609.035, subdivision 1 provides that "* * * if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them." Minn.Stat. § 609.035, subd. 1 (Supp.1997).

**4.** The sentencing guidelines were subsequently amended to reflect this court's decision in *Hernandez.* Section II.B.1 now provides that an offender will receive a criminal history point for each felony conviction which was sentenced "before the current sentencing," Minnesota Sentencing Guidelines II.B.1 (1997), rather than the pre-*Hernandez* language which included convictions

"before the date of sentencing for the current offense" in calculating an offender's criminal history score. Minnesota Sentencing Guidelines cmt. II.B.101 (1980).

**5.** Gould's contention that the controlled substance statutes punish offenders for their status as a particular kind of dealer is somewhat supported by the legislative history of those statutes. Prior to 1989, controlled substance statutes did not differentiate levels of offenses based on the quantity of drugs involved. *See* Minn.Stat. § 152.09 (1988). In 1989, the legislature restructured the controlled substance statutes so that weight-based classifications applied to all drug offenses. *See* Minn.Stat. § 152.021–25 (1990). Consequently, offenders selling greater quantities were classified under a more severe level than those selling lesser amounts.

Furthermore, the testimony of a witness during legislative hearings suggests that the weight-

those statutes do not presume that the offender is involved in the ongoing business of selling drugs. The legislature has the prerogative to create degrees of punishment for drug crimes based on the quantity of drugs involved. *State v. Clausen,* 493 N.W.2d 113, 118 (Minn.1992). The mere fact that the legislature assigns those degrees of punishment consistent with the quantities that would be sold by various levels of dealers does not mean that the statutes presume that an offender is engaged in multiple drug sales. Gould further argues that based on the facts of his case, the drug sales for which he was convicted were all part of a single behavioral act such that section 609.035 prohibits the application of the *Hernandez* method in determining his sentence. Under section 609.035, the factors to be considered in determining whether multiple offenses constitute a single behavioral act are time, place, and whether the offenses were motivated by a desire to obtain a single criminal objective. *Hartfield,* 459 N.W.2d at 670 (citing *State v. Norregaard,* 384 N.W.2d 449 (Minn.1986)); *State v. Hawkins,* 511 N.W.2d 9, 13 (Minn. 1994). The determination of whether multiple offenses are part of a single behavioral act under section 609.035 is not a mechanical test, but it involves an examination of all the facts and circumstances. *Banks,* 331 N.W.2d at 493.

A balancing of the above factors and the facts and circumstances of this case weighs in favor of finding that Gould's multiple drug sales constituted separate and distinct offenses under section 609.035. All three sales took place on different days and at different places, with the exception that two of the sales occurred in the same parking lot. The separate sales were not motivated by a desire to obtain a single criminal objective. While Gould and other defendants convicted of drug sales may be motivated by the single criminal objective of selling drugs to relieve financial hardship, this court has held that the criminal plan of obtaining as much

money as possible is too broad an objective to constitute a single criminal goal within the meaning of section 609.035. *See Eaton,* 292 N.W.2d at 266–67 (finding that two offenses of theft of a check committed three days apart were separate incidents for the purposes of section 609.035). Consequently, we affirm the determination of the court of appeals that the *Hernandez* method was appropriately used to determine Gould's sentence.

Affirmed.

BLATZ, J., took no part in the consideration or decision of this case.

---

based classifications were consistent with the amount that various levels of dealers would possess. Hearing on S.F. 3–H.F. 59. Before the House Subcomm. on Criminal Justice, 76th Legis. Sess., (Minn., Feb. 24, 1989)(statement of James Kamin, Asst. Hennepin County Attorney).

Thus, the weight-based cutoff for third-degree sales was consistent with the amount that a street dealer would sell, whereas the weight-based cutoff for first-degree sales was consistent with what a wholesale dealer would sell. *Id.*