STATE of Minnesota, Respondent,

v.

Cody Adam BAUER, Appellant.

No. A08–1698.

Supreme Court of Minnesota.

Jan. 5, 2011.

---

Lori Swanson, Attorney General, John B. Galus, Assistant Attorney General, St. Paul, MN; and Lisa B. Hanson, Roseau County Attorney, Roseau, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, St. Paul, MN, Kirstin Kopp, Special Assistant State Public Defender, Fridley, MN, for appellant.

## OPINION

GILDEA, Chief Justice.

The question presented in this case is whether the district court violated Minn. Stat. § 609.035 (2010) when it sentenced appellant Cody Bauer (Bauer) for both selling a controlled substance and failing to affix tax stamps to the controlled substance. Because we conclude that the crimes did not arise from the same behavioral incident, we hold that section 609.035 is not applicable, and we therefore affirm.

The facts at trial established that in May 2006 the Minnesota Bureau of Criminal Apprehension (BCA) and the Paul Bunyan Drug Task Force (Task Force) engaged in a five-month operation to "identify drug traffickers" and eliminate drugs from the city of Warroad. The Task Force contracted with an experienced confidential informant (CI) to create a fictional storefront to serve as a front for the operation. The drug transactions occurred in a "buy room" located in the back of the store. The buy room was equipped with video and audio equipment so law enforcement could view and listen to the transactions from a location across the street. The BCA paid the CI a salary of $2,000 a month and between $50 to $100 for each buy depending on the quantity and the type of drug the CI purchased. The CI was responsible for paying the rent and utilities on the storefront along with any overhead costs associated with maintaining the storefront. When the CI made a buy, law enforcement required that he sign a receipt indicating that he received the payment. The CI then placed the drugs in a heat-sealed bag and deposited the drugs into a locked cabinet.

The CI hired appellant's mother, Denise Bauer (Denise), in May 2006 to work in the store part time. On May 16, while working with Denise, the CI learned that Denise was taking morphine for migraines and inquired whether he could buy any of her medication or whether she had any other drugs to sell. Denise told the CI that she did not have anything to give him but thought that her son, Cody, could obtain drugs for the CI. The CI then asked Denise to call Bauer to see if he had anything to sell. Denise called Bauer, and about forty-five minutes later, Bauer arrived at the CI's store with an eighth of an ounce of marijuana, which the CI purchased for $25.

Bauer went back to the CI's store on June 29. Bauer told the CI that he was going to obtain an undetermined amount of ecstasy while on a trip to Oslo, Minnesota, and asked the CI if he would "front him money" for the ecstasy. The CI stated that he would not provide Bauer with the money to purchase the ecstasy, but he did give Bauer $50 to purchase marijuana. About an hour later, Bauer returned to the store and sold the CI a quarter ounce of marijuana.

Bauer returned from Oslo on July 3. He went to the CI's store that same day and told the CI that he had "gotten some ecstasy" and wanted to know if the CI wanted to purchase any from him. The CI

stated that he wanted to purchase two pills for himself and his girlfriend. Bauer then left the store to retrieve the ecstasy and later returned with two pills. The CI subsequently paid Bauer for the two pills. During this transaction, the CI asked Bauer for 10 more ecstasy pills. Bauer left the store to retrieve 10 more ecstasy pills and he returned later that same day with the 10 pills. Bauer said the 10 pills would cost $320, but the CI said he would only pay $300 for the pills. Bauer agreed to this price and sold the 10 ecstasy pills to the CI.

Respondent State of Minnesota subsequently charged Bauer in connection with the drug sales to the CI. Specifically, the State charged Bauer with: sale of a controlled substance in the third degree, Minn.Stat. § 152.023, subd. 1(2) (2010) (count 1); failure to affix tax stamps to a controlled substance, Minn.Stat. § 297D.09, subd. 1a (2010) (count 2); two counts of sale of a controlled substance in the fifth degree, Minn.Stat. § 152.025, subd. 1(1) (2008) (counts 3 and 4); and conspiracy to commit a controlled-substance crime in the fifth degree, Minn.Stat. §§ 152.025, subd. 1(1), 152.096 (2010) (count 5). Counts 1 and 2 involved ecstasy and counts 3–5 involved marijuana. The jury found Bauer guilty of all five counts and the district court convicted him of each offense. The court sentenced Bauer on the first four counts in accordance with the Sentencing Guidelines.[1]

Bauer appealed his sentence to the court of appeals, arguing that he should not have been sentenced on both count 1 and count 2. *State v. Bauer*, 776 N.W.2d 462, 477 (Minn.App.2009). The court held · that both offenses at issue on appeal—sale of a controlled substance and failure to affix a tax stamp—were intentional crimes. *Id.* at 479. Because Bauer was not motivated by a single criminal objective when he committed the offenses, the court held that the offenses did not constitute a single behavioral incident. *Id.* at 480. The court accordingly affirmed Bauer's sentences. *Id.*

We granted Bauer's petition for review. On appeal to our court, Bauer argues that the district court erred in sentencing him on both the convictions for selling the controlled substance of ecstasy and failing to affix tax stamps to the ecstasy. Bauer contends that the crimes arose from a single behavioral incident, and that therefore multiple sentences violated Minn.Stat. § 609.035.

## I.

■ Under Minn.Stat. § 609.035, subd. 1, "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them." We have interpreted section 609.035 to bar multiple sentences for crimes that arise from a single behavioral incident.[2] *State v. Bookwalter*, 541 N.W.2d 290, 293 (Minn. 1995). And we have used different tests to determine whether crimes arise from a single behavioral incident. *State v. Johnson*, 273 Minn. 394, 404, 141 N.W.2d 517, 525 (1966). Which test applies depends on

---

1. The district court did not sentence Bauer on count 5, conspiracy to commit a controlled substance crime in the fifth degree, because the court concluded that the conspiracy offense and count 3, sale of a controlled substance in the fifth degree, arose from the same behavioral incident.

2. There are exceptions to the bar set forth in section 609.035. *See* Minn.Stat. § 609.035, subds. 3–6. None are at issue here.

whether the crime at issue contains an intent element. *Id.* at 404, 141 N.W.2d at 525.

The sale of a controlled substance is an intentional crime for purposes of Minn. Stat. § 609.035. *See State v. Gould,* 562 N.W.2d 518, 521 (Minn.1997) (applying the test of intentional crimes to determine whether multiple sale-of-controlled-substance offenses arose from a single behavioral incident). But we have not previously determined whether the offense of failing to affix a tax stamp to a controlled substance contains a mens rea requirement. The court of appeals analyzed this offense as an intentional crime for purposes of section 609.035. *Bauer,* 776 N.W.2d at 479. The parties do not ask us to revisit the conclusion. Instead, both Bauer and the State ask us to analyze the tax-stamp offense as an intentional crime. Accordingly, we will assume without deciding for purposes of this case that the offense of failure to affix tax stamps, in violation of Minn.Stat. § 297D.09, subd. 1a, is an intentional crime.

 In order to determine whether two intentional crimes are part of a single behavioral incident, we consider "factors of time and place ... [and w]hether the segment of conduct involved was motivated by an effort to obtain a single criminal objective." *Johnson,* 273 Minn. at 404, 141 N.W.2d at 525.[3] The application of this test depends heavily on the facts and circumstances of the particular case. *State v. Kooiman,* 289 Minn. 439, 441, 185 N.W.2d 534, 535 (1971).

## A.

We turn first to consideration of the time and place factors. The crimes at issue are third-degree sale of a controlled substance (count 1) and failure to affix tax stamps to a controlled substance (count 2). The third-degree controlled substance crime is committed when the sale takes place. *See* Minn.Stat. § 152.023, subd. 1(2) ("A person is guilty of controlled substance crime in the third degree if ... on one or more occasions within a 90–day period the person unlawfully sells one or more mixtures ... packaged in dosage units, and equals ten or more dosage units...."). In order to violate the tax-stamp statute, the person charged must be a "tax obligor," and a person is a "tax obligor" if the person "acquires or possesses ... ten or more dosage units of any controlled substance which is not sold by weight." Minn.Stat. § 297D.01, subd. 3. A tax obligor violates the tax-stamp statute when the tax obligor either distributes or possesses controlled substances "without affixing the appropriate tax stamps." Minn.Stat. § 297D.09, subd. 1a. The crime of failing to affix a tax stamp is complete when the tax obligor possesses the requisite controlled substance without affixing the tax stamp.

The record establishes that the two crimes were committed at different times and in different locations. Bauer committed the third-degree controlled substance crime when he sold 10 ecstasy pills to the CI. But Bauer violated the tax stamp statute before the sale took place and at a location different from the CI's store. Specifically, Bauer was a tax obligor because of his possession of ecstasy, and his

---

**3.** To determine whether two unintentional crimes or an intentional and an unintentional crime arise from a single behavioral incident, we analyze the facts to determine whether the offenses "occur[red] at substantially the same time and place and ar[ose] out of a continu-ous and uninterrupted course of conduct, manifesting an indivisible state of mind or coincident errors of judgment." *State v. Reiland,* 274 Minn. 121, 124, 142 N.W.2d 635, 637 (1966).

violation of the tax stamp statute was therefore complete at some point in time and place prior to his sale of the ecstasy to the CI in the store.

Bauer's testimony makes these differences in time and location clear. Bauer testified that he and the CI had a conversation prior to his trip about getting ecstasy in Oslo, and when he returned from Oslo on July 3, he told the CI that "[he] had gotten some ecstasy and asked [the CI] if he wanted any." Bauer's testimony establishes that he had ecstasy in his possession on July 3 prior to entering the CI's store and before he knew the CI would buy any. Bauer testified that the CI said that he wanted two pills. Bauer then testified that he left to "go get them" and returned later with the two pills. When Bauer returned, the CI then said that he wanted 10 more pills. Bauer testified, "I told [the CI] that I could do that and I went back and got the ten pills that he requested and returned once again." According to Bauer's testimony, he had at least 10 ecstasy pills in his possession since his return from the Oslo trip, he possessed the ecstasy pills prior to making the ecstasy sale, and this possession occurred before he entered the CI's store. The record also establishes that the tax stamp required by section 297D.09 was not affixed to the ecstasy that Bauer possessed and later sold to the CI. Because Bauer possessed the ecstasy without a tax stamp at a time and place different from where the sale took place, there is not a unity of time and place of the crimes.

### B.

With respect to the criminal-objective factor, the evidence also establishes that the crimes were not motivated by the same criminal objective. In assessing whether the crimes were committed with the same criminal objective, we have examined the relationship of the crimes to each other. *See State v. Bookwalter,* 541 N.W.2d 290, 294 (Minn.1995). In *Bookwalter,* the defendant testified that he intended to sexually assault the victim after he realized the victim was in the van he had stolen, and though he did not intend to murder the victim when he committed the sexual assault, he attempted to murder her as "an apparent afterthought." *Id.* at 296. His criminal objectives were therefore different when committing each crime and his offenses consequently did not constitute a single behavioral incident. *Id.* at 295–96.

Similarly, in *State v. Krampotich,* we held that the defendant could be sentenced for the offenses of unauthorized use of a motor vehicle, simple robbery, and aggravated assault because the offenses did not arise from a single behavioral incident. 282 Minn. 182, 187, 163 N.W.2d 772, 776 (1968). We concluded that the three crimes "constituted a divisible series of incidents" given the lapse of time between each incident and because there was "no single criminal objective" as the offenses "simply took place as an idea came into defendants' heads." *Id.* at 187, 163 N.W.2d at 776.

By contrast, in *State v. Scott,* we held that the defendant could not be sentenced for both the offenses of possession of burglary tools and burglary because the defendant committed the offenses at the same time and he "possessed those tools for the purpose of facilitating the burglary." 298 N.W.2d 67, 68 (Minn.1980). The criminal objectives were therefore the same for both offenses—to commit a burglary. *Id.; cf. Mercer v. State,* 290 N.W.2d 623, 626 (Minn.1980) (holding that the defendant could be sentenced for both the offenses of possession of a controlled substance and unlawful possession of a handgun even though the offenses were discovered at the same time because

"nothing in the record reveals that either crime was in furtherance of the other or that defendant had a single criminal objective").

In this case, the crimes are divisible in the sense that one crime was not committed in furtherance of the other. Indeed, the criminal objective of selling the ecstasy is the unlawful sale itself, while the criminal objective of failing to affix tax stamps to the ecstasy is tax evasion.

Bauer argues, however, that he had one objective—to share his drugs with the CI without profiting. He relies on the court of appeals' decisions in *State v. Marsh*, No. C5–91–541, 1992 WL 20739, at *2 (Minn. App. Feb. 11, 1992) (holding that defendant could not be sentenced for both sale of a controlled substance and violation of the tax stamp statute), and *State v. Robinson*, No. C4–93–115, 1993 WL 430400, at *3 (Minn.App. Oct. 26, 1993) (holding that defendant could be sentenced for both sale of a controlled substance and violation of the tax stamp statute). Bauer contends that his and Marsh's criminal objective was simply to share drugs with friends without profiting, whereas Robinson's criminal objective was pecuniary gain. Bauer argues that he and Marsh were users whereas Robinson was a dealer. Bauer argues that because he and Marsh were not dealers, they were not motivated by profit and therefore the two offenses had the same criminal objective—to share drugs with friends.

Even if Bauer's motive was not to make a profit, this does not mean that the crimes were motivated by the same criminal objective for purposes of section 609.035. Our case law recognizes that "the criminal plan of obtaining as much money as possible is too broad an objective to constitute a single criminal goal within the meaning of section 609.035." *Gould*, 562 N.W.2d at 521 (citing *State v. Eaton*, 292 N.W.2d 260,

266–67 (Minn.1980)). If the goal of obtaining as much money as possible is too broad to constitute a single criminal objective, then logically, the goal of not making any money is similarly too broad to satisfy the standard.

Moreover, whether Bauer was motivated by a desire for profit seems irrelevant in the context of the tax-stamp statute because it is not an income tax. The statute imposes a tax obligation on any person who, among other things, "in any manner *acquires* or *possesses*" a controlled substance in violation of Minnesota law. Minn. Stat. § 297D.01, subd. 3 (emphasis added). The statute therefore does not consider whether the obligor made a profit from the sale of a controlled substance.

In sum, even assuming that Bauer did not profit from his crimes, the criminal objectives of the two offenses were still different. The objective of the sale of a controlled substance is the unlawful sale itself, regardless of any profit realized, and the criminal objective for the tax stamp offense is tax evasion.

Bauer also argues that the offenses arose from a single behavioral incident because selling a controlled substance is a necessary element of violating the tax stamp statute. But we have said that "the focus of [section 609.035] is primarily on the defendant's conduct rather than the elements of the crimes committed...." *Bookwalter*, 541 N.W.2d at 295–96.

In any event, if we were to examine the elements of the two offenses, Bauer is wrong that sale of a controlled substance is a necessary element of violating the tax stamp statute. This is so because a violation of the tax stamp statute does not require a sale of the controlled substance. Rather, this offense is complete with mere possession of the controlled substance without the requisite tax stamp. *See*

Minn.Stat. § 297D.09, subd. 1a. Moreover, the crime of third-degree sale of a controlled substance does not depend on whether the controlled substance contains a tax stamp. *See* Minn.Stat. § 152.023, subd. 1(2). Accordingly, even if an analysis of the elements is relevant to the criminal-objective inquiry, this analysis confirms that the crimes at issue here did not share the same criminal objective. *See Bookwalter*, 541 N.W.2d at 296 (noting that when considering a defendant's conduct, it is "meaningful to recognize" when crimes have different elements).[4]

Because Bauer's convictions for selling a controlled substance and failing to affix a tax stamp to a controlled substance did not arise from a single behavioral incident, we hold that the district court did not violate Minn.Stat. § 609.035 when it sentenced Bauer for both offenses.

Affirmed.

---

4. The State alternatively argues that even if we determine that the crime of failing to affix a tax stamp to a controlled substance and the underlying controlled-substance crime constitute a single behavioral incident for purposes of Minn.Stat. § 609.035, the Legislature authorized separate punishments for both crimes in Minn.Stat. ch. 297D (2010). We do not need to determine whether the Legislature authorized separate punishments for these offenses in chapter 297D because the evidence establishes that Bauer's convictions for failing to affix tax stamps to ecstasy and selling ecstasy did not arise from a single behavioral incident.