*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1775**

State of Minnesota,
Respondent,

vs.

Marvin George Penn,
Appellant

**Filed August 29, 2016
Affirmed in part, reversed in part, and remanded
Worke, Judge**

Hennepin County District Court
File No. 27-CR-14-35043

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Ross, Judge; and Connolly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant challenges his convictions for pattern of stalking conduct and arson, arguing that the district court abused its discretion by admitting hearsay evidence and

erred by imposing separate sentences for offenses committed as part of a single behavioral incident. We affirm appellant's convictions, but reverse and remand for resentencing.

**FACTS**

Appellant Marvin George Penn met C.B. at Catholic Charities Opportunity Center (CCOC) in January 2014 while both were homeless. The two began a romantic relationship and became engaged, but the relationship quickly deteriorated.

In March 2014, Penn became angry with C.B. after she used a computer at CCOC. Penn grabbed C.B.'s shirt, called her a "whore," and told her she could not use a computer without asking him. On April 6, 2014, C.B. ended the engagement. Penn called C.B. a "whore" and a "bit-h," grabbed her necklace and broke it, ripped her dress, and scratched her. C.B. went to the hospital and told a police officer what happened. C.B. filled out a domestic violence supplement form (DVSF), indicating that she believed that Penn would "seriously injure or kill [her]" because he told her "that he has murder[ed] before." The next day, Penn ran up to C.B. The police were called and Penn was arrested. C.B. received an order for protection (OFP).

Sometime in June, Penn punched C.B. in the mouth, grabbed her purse, dragged her on the ground, and then ran off with her purse. In August, C.B. was living in a rooming house. Penn stayed with C.B. and would not let her go anywhere alone. Penn would constantly lash out, push, shove, scratch, and choke C.B. On one occasion, Penn threw food in C.B.'s face because she prepared food for herself and did not offer him anything. On a separate occasion, Penn hit C.B. with a pot, leaving a scar on her

2

forehead.  On another occasion, Penn threatened to beat C.B. if she refused to give him oral sex.

On October 13, 2014, C.B. sneaked away to the domestic abuse service center where she discovered that the OFP was still valid.  C.B. filled out another DVSF, indicating that she believed that Penn would "seriously injure or kill [her]" because he told her that he "is not scared of the police and he would burn down [her] house."

That night, Penn showed up at C.B.'s residence and took her purse.  On October 15, Penn told C.B. that her purse was outside of her residence.  C.B. went outside, but her purse was not where Penn allegedly left it.  C.B. returned to her room, and Penn came out of her closet with a knife.  Penn told C.B., "I'm going to kill you bit-h, you about to die, you going to die, I'm going to stab you in your neck."  A neighbor called the police.

On the night of October 24, 2014, as C.B. walked to her vehicle, she noticed that Penn was in it.  C.B. ran and the police were called.  Officers found a screwdriver and duct tape outside C.B.'s vehicle.  After the officers left, Penn ran up to C.B.'s vehicle, pounded on the window, and tried to open the driver's door.  C.B. called the police a second time.  Penn later told C.B. that he was going to tie her up with the duct tape and scare her with the screwdriver into driving where he wanted to take her.

Another night in October 2014, C.B. saw that someone marked on the exterior door of her residence "[C.B.] can't live here."  C.B. suspected that Penn wrote the message because he had told her that she cannot live in Minnesota if she is not with him.  Penn admitted to C.B. that he wrote the message.

On October 26, 2014, the back door to C.B's residence was set on fire. C.B. told an officer that she believed that Penn started the fire because he previously told her that he was going to burn the house down to get her evicted, and a week before the fire, Penn told C.B. that he was going to burn down her house because she needed to get the "F" out of Minnesota. Penn eventually admitted to C.B. that he started the fire.

Penn was charged with first-degree arson, in violation of Minn. Stat. § 609.561, subd. 1 (2014), and pattern of stalking conduct, in violation of Minn. Stat. § 609.749, subd. 5(a) (2012).

At the conclusion of Penn's jury trial, the district court instructed the jury that in order to find Penn guilty of pattern of stalking conduct, it had to find that Penn engaged in two or more criminal acts within a five-year period, and knew or had reason to know that C.B. would feel terrorized or fear bodily harm. The state sought to establish the two-or-more-criminal-acts element with evidence of nine incidents.

The jury found Penn guilty of pattern of stalking conduct and first-degree arson. The district court sentenced Penn to 43 months in prison for the pattern-of-stalking-conduct conviction and a concurrent 108 months in prison for the arson conviction. This appeal follows.

**DECISION**

*Evidence*

Penn argues that the district court abused its discretion by admitting hearsay evidence. "Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion." *State v. Amos*, 658 N.W.2d 201,

4

203 (Minn. 2003). An appellant bears the burden of establishing that the district court abused its discretion and that he was prejudiced. *State v. Ahmed*, 782 N.W.2d 253, 259 (Minn. App. 2010). "[A] new trial is not required unless there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *State v. Asfeld*, 662 N.W.2d 534, 544 (Minn. 2003) (quotation omitted).

When a defendant fails to object to the admission of evidence, this court's review is under the plain-error standard. *See* Minn. R. Crim. P. 31.02 ("Plain error affecting a substantial right can be considered by the court . . . on appeal even if it was not brought to the [district] court's attention."). An appellant must show (1) an error, (2) that is plain, and (3) that affects substantial rights. *State v. Dao Xiong*, 829 N.W.2d 391, 395 (Minn. 2013). If these requirements are met, an appellate court then determines "whether the error must be addressed to ensure the fairness and integrity of the judicial proceedings." *Id.*

Penn argues that the district court improperly allowed two police officers to testify regarding statements Penn had allegedly made to C.B. Generally, hearsay is inadmissible at trial. Minn. R. Evid. 802. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Minn. R. Evid. 801(c). Testimony that is offered to show something other than the truth of the matter asserted is not hearsay. *State v. Moua*, 678 N.W.2d 29, 37 (Minn. 2004).

An officer testified that C.B. reported that she feared Penn because he "had absolutely no apprehensions about harming other people, . . . he would actually brag

5

about it and took pride in the fact that he had done some acts before." The officer continued:

> [C.B.] was afraid. She had felt that [Penn] had harmed people before, possibly killed people before. She stated that she made him feel that way. She also stated that he even stated that he'd come back and burn her house down. She felt imprisoned in her own place, and these were the types of threats she was receiving.

Penn objected on a hearsay basis, which the district court overruled. The district court did not abuse its discretion by admitting this evidence because it was not offered to prove the truth of the matter asserted. The state did not offer these statements as proof that Penn harmed or killed people. The state offered the statements to show that C.B. feared Penn and felt threatened by him.

Another officer testified that C.B. reported that Penn threatened to kill her. The officer testified that C.B. told him that she took Penn's threats seriously because "she was afraid of him" and she believed that he would kill her because "he told her that he has killed people in Chicago." Penn did not object. The district court did not plainly err by admitting this evidence because it was not offered to prove the truth of the matter asserted. The state did not offer these statements as proof that Penn killed people in Chicago. The statements were offered to show that C.B. was afraid of Penn. The district court's evidentiary rulings were appropriate.

*Sentence*

Penn argues that, because the state relied on the arson to support the pattern of stalking conduct, the offenses arose out of the same behavioral incident and he should

6

have received only one sentence. "[I]f a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses . . . ." Minn. Stat. § 609.035, subd. 1 (2012). Thus, if two or more offenses are committed as part of a single behavioral incident, a defendant may be sentenced for only one offense. *State v. Rivers*, 787 N.W.2d 206, 213 (Minn. App. 2010), *review denied* (Minn. Oct. 19, 2010).

"Whether a defendant's offenses occurred as part of a single course of conduct is a mixed question of law and fact." *State v. Jones*, 848 N.W.2d 528, 533 (Minn. 2014). This court reviews the district court's findings of fact for clear error and its application of law to the facts de novo. *Id.* The state has the burden of proving by a preponderance of the evidence that the actions underlying multiple offenses did not occur as part of a single behavioral incident or course of conduct. *State v. McCauley*, 820 N.W.2d 577, 591 (Minn. App. 2012), *review denied* (Minn. Oct. 24, 2012).

When a defendant has been found guilty of multiple intentional offenses, a court considers whether (1) there is unity of time and place, and (2) whether the defendant's conduct was "motivated by an effort to obtain a single criminal objective." *State v. Bauer*, 792 N.W.2d 825, 828 (Minn. 2011) (quotation omitted). "The application of this test depends heavily on the facts and circumstances of the particular case." *Id.*

Penn's acts took place between March and October 2014. The acts were continuous over that period of time and most occurred where C.B. resided. Penn's conduct was motivated by an effort to obtain a single criminal objective—to terrorize C.B. or to cause her to fear bodily harm.

Penn's conviction for pattern of stalking conduct depended on the jury finding that he committed two or more criminal acts against C.B. within a five-year period. One of the alleged criminal acts was arson. Without a special verdict form, it is unclear which acts the jury believed Penn committed in reaching its conclusion that Penn committed at least two criminal acts against C.B. But at least one of the acts the jury found that Penn committed was arson. Because the state has not met its burden in showing that the jury did not use the arson offense as one of the offenses to prove the pattern of stalking conduct, Penn's sentence must be reversed and remanded.

**Affirmed in part, reversed in part, and remanded.**