*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0566**

State of Minnesota,
Respondent,

vs.

Rafael Antonio Segura-Arroyo,
Appellant.

**Filed February 14, 2024**
**Affirmed in part, reversed in part, and remanded**
**Slieter, Judge**

Cottonwood County District Court
File No. 17-CR-21-406

Keith Ellison, Attorney General, Ed Stockmeyer, Assistant Attorney General, St. Paul,
Minnesota; and

Nick A. Anderson, Cottonwood County Attorney, Windom, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness,
Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Cochran, Presiding Judge; Slieter, Judge; and

Halbrooks, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

**SLIETER**, Judge

On appeal from final judgment of conviction for multiple counts of child-pornography possession, appellant claims that the district court erred in denying his motion to suppress evidence because Facebook was acting as a government agent when it conducted a warrantless search of his account. Appellant also claims that the district court erred in its application of the *Hernandez* method of sentencing and by imposing conditional-release terms. Because appellant failed to demonstrate that Facebook was acting as a government agent when it conducted a search of his account, the private search doctrine applies, and we affirm the district court's denial of appellant's suppression motion. But, because the district court erred in its application of the *Hernandez* method of sentencing and by imposing conditional-release terms for stayed sentences, we reverse and remand for resentencing.

## FACTS

Respondent State of Minnesota charged appellant Rafael Antonio Segura-Arroyo by complaint with six counts of possession of child pornography in violation of Minn. Stat. § 617.247, subd. 4 (2020). Segura-Arroyo moved to suppress the evidence obtained during the search of his residence, claiming that Facebook was acting as a government agent when it conducted a warrantless search of his account. The following facts derive from the evidence received during the omnibus hearing involving Segura-Arroyo's suppression motion.

In May 2020, the National Center for Missing and Exploited Children (NCMEC) received a tip from Facebook indicating that a user named "Rafael Segura" had accessed child pornography. The NCMEC forwarded the tip to the Minnesota Bureau of Criminal Apprehension (BCA), and the BCA referred the tip to local law enforcement.

An officer with the Windom Police Department reviewed the tip, which provided the foregoing user information and included the internet protocol (IP) address corresponding with the account that had accessed the child pornography. After viewing the suspected child pornography and confirming the images and videos contained illegal content, the officer obtained a warrant to search Segura-Arroyo's person and residence. Officers executed the warrant on December 21, 2020. While executing the warrant, officers spoke to Segura-Arroyo. Segura-Arroyo indicated that he used and accessed his Facebook account through his cellphone, and he noted that he was the only person with access to his cellphone. Officers searched Segura-Arroyo's person and seized his electronic devices capable of accessing the internet. The seized items were sent to the BCA for analysis, which later identified child pornography.

The district court denied Segura-Arroyo's motion, determining that Facebook was not acting as a government agent and that Facebook's search of Segura-Arroyo's account, therefore, did not violate the Fourth Amendment.

The case proceeded to a court trial in November 2022. The district court heard testimony from law enforcement and accepted into evidence the images depicting child pornography. The district court found Segura-Arroyo guilty of all counts.

3

At the sentencing hearing, the state argued that the district court should sentence on, and assign criminal-history points to, counts 1 through 4 via the *Hernandez* method, *see infra* part II, claiming the offenses were not part of a single behavioral incident. Segura-Arroyo argued that, because the four counts were part of a single behavioral incident, only the two most severe counts should be sentenced via the *Hernandez* method and that the two remaining counts should be sentenced with zero criminal-history points. Without ruling on whether the offenses were not part of a single behavioral incident, the district court sentenced Segura-Arroyo via the *Hernandez* method on counts 1 through 4.[1] The district court stayed execution of each sentence and imposed conditional-release terms on each. Segura-Arroyo appeals.

## DECISION

**I.     The district court properly applied the private search doctrine and, therefore, did not err in denying Segura-Arroyo's motion to suppress.**

Both the United States and Minnesota Constitutions protect "against unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. Warrantless searches and seizures are *per se* unreasonable unless they fall under an established exception. *State v. Othoudt*, 482 N.W.2d 218, 221-22 (Minn. 1992). "But such protections are intended as a restraint on the activities of the government, not the actions of private parties." *State v. Pauli*, 979 N.W.2d 39, 46 (Minn. 2022). It is this "principle [that] serves as the foundation for the private search doctrine, which recognizes that government agents

---

[1] The district court found that counts 5 and 6 were lesser-included offenses and, therefore, did not enter convictions or sentences for those counts.

4

may duplicate searches performed previously by private parties without running afoul of the Fourth Amendment." *Id.*

Segura-Arroyo claims that the district court erred in denying his motion to suppress, claiming that Facebook acted as a government agent when it searched his account.[2] The issue raised in Segura-Arroyo's appeal requires our determination of whether the private search doctrine applies. "The rationale behind the private search doctrine is that once an individual's reasonable expectation of privacy is frustrated by a private party, the government can perform the same search without a further violation of the person's privacy." *Id.* at 47.

"The determination of whether the private search doctrine applies is a question of fact." *Id.* at 51. When reviewing a district court's pretrial suppression order, appellate courts "review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Jordan*, 742 N.W.2d 149, 152 (Minn. 2007). "Findings of fact are clearly erroneous if, on the entire evidence, we are left with the definite and firm conviction that a mistake occurred." *State v. Anderson*, 784 N.W.2d 320, 334 (Minn. 2010).

"The private search doctrine's applicability depends on (1) whether a private party conducted the search; and (2) whether a subsequent search by law enforcement or other government actors exceeded the scope of the initial private search." *Pauli*, 979 N.W.2d at 46-47 (citing *United States v. Jacobsen*, 466 U.S. 109, 113-17 (1984)). Segura-Arroyo

---

[2] Segura-Arroyo does not challenge the search warrant on appeal.

concedes that Facebook is a private party, but he argues that the federal law requiring internet service providers to report child-exploitative materials transformed Facebook into a government agent. As the party seeking suppression, Segura-Arroyo bears the burden of proving that Facebook was acting as a government agent (and, hence, no longer a private party) when it searched his account. *Id.* at 48.

To prove a private actor, such as Facebook, "is acting as a government instrument or agent when conducting a search," Segura-Arroyo must show that "the State knew of and acquiesced in the search" and that "the search was conducted to assist law enforcement's interests." *Id.* at 51. Segura-Arroyo claims he satisfied this burden, arguing that "[t]he facts here show the government knew these searches took place and Facebook was acting at law enforcement's behest, not in its own interests." We are not persuaded.

Segura-Arroyo points to no evidence suggesting that the government knew of and acquiesced to the search conducted by Facebook. *Id.* at 48 (noting that "[t]he burden to prove that a private party was acting on behalf of the government when conducting a Fourth Amendment search falls on the party seeking suppression of the evidence"). And Segura-Arroyo's reference to federal law which obligates electronic service providers, like Facebook, to *report* child pornography found on their websites does not answer the question whether it *searched* his account as a government agent. 18 U.S.C. § 2258A (2020). Moreover, "[i]f the government does not know of and acquiesce in the search, the search cannot be attributed to the government and the inquiry ends." *Pauli*, 979 N.W.2d at 51 (quoting *State v. Jorgensen*, 660 N.W.2d 127, 131 (Minn. 2003)).

The district court's finding that Facebook was not acting as a government agent is not clearly erroneous because there is no evidence supporting Segura-Arroyo's claim to the contrary. And, because Facebook is a private actor and was not acting as a government agent, the private search doctrine applies, and Facebook's search of Segura-Arroyo's account did not violate the Fourth Amendment. *Pauli*, 979 N.W.2d at 46. Therefore, the district court did not err in denying Segura-Arroyo's motion to suppress.

## II. The district court erred in sentencing Segura-Arroyo by *Hernandizing* all four counts and by imposing conditional-release terms on stayed sentences.

Whether a sentence conforms to the requirements of a statute or the sentencing guidelines is a question of law reviewed *de novo*. *State v. Williams*, 771 N.W.2d 514, 520 (Minn. 2009).

### *Hernandez* Method

This court "may at any time correct a sentence not authorized by law." Minn. R. Crim. P. 27.03, subd. 9. "A sentence based on an incorrect criminal-history score is an illegal sentence . . . ." *State v. Woods*, 945 N.W.2d 414, 416 (Minn. App. 2020) (citing *State v. Maurstad*, 733 N.W.2d 141, 147 (Minn. 2007)).

Segura-Arroyo argues that the district court erred in *Hernandizing* counts 3 and 4 because all four counts arose out of a single behavioral incident. *See State v. Hernandez*, 311 N.W.2d 478 (Minn. 1981). We agree.

Pursuant to the *Hernandez* method, "when a defendant is sentenced for multiple offenses[, not arising from a single course of conduct,] on the same day, a conviction for which the defendant is first sentenced is added to his or her criminal-history score for

7

another offense for which he or she is also sentenced." *Williams*, 771 N.W.2d at 522 (citing *State v. Soto*, 562 N.W.2d 299, 303 (Minn. 1997) (explaining the *Hernandez* method)).

However, "[w]hen multiple current convictions arise out of a single course of conduct in which there were multiple victims, weights are given only to the two offenses at the highest severity levels." Minn. Sent'g Guidelines 2.B.1.e(2) (2020). Offenses are part of a single behavioral incident when they occur at substantially the same time and place and are motivated by a single criminal objective. *State v. Bakken*, 883 N.W.2d 264, 270 (Minn. 2016) (quotations omitted). "The state bears the burden of proving, by a preponderance of the evidence, that a defendant's offenses were not part of a single behavioral incident." *Id.* Determining "[w]hether the offenses were part of a single behavioral incident is a mixed question of law and fact, so we review the district court's findings of fact for clear error and its application of the law to those facts de novo." *Id.*

At Segura-Arroyo's sentencing hearing, the state argued that the offenses were not part of a single behavioral incident, noting that the "videos had modified dates that were different," which "shows that they were last accessed or changed/modified" on different dates. Segura-Arroyo's trial counsel countered by noting that Segura-Arroyo was charged with possession and that the amended complaint indicates that the offenses occurred on the same date.

Possession "is complete when the offender takes possession of the prohibited item." *Id.* (citing *State v. Bauer*, 792 N.W.2d 825, 828-29 (Minn. 2011)). The record shows that the offenses were complete on December 21, 2020, which is the offense date alleged on the complaint and proved by the evidence presented at trial. Whether the videos were

8

changed or modified at another time is irrelevant because the offenses were complete when Segura-Arroyo took possession of the child pornography. At trial, the state proved possession occurred on or about December 21, 2020. *See id.* (using the time of completion when determining whether possession of child-pornography offenses were part of a single behavioral incident). Because the offenses were complete at the same time, and the state makes no argument that they did not occur at the same place or were not motivated by the same criminal objective, they were part of a single behavioral incident. Therefore, the district court erred in adding the criminal-history points when it sentenced Segura-Arroyo on counts 3 and 4. Because Segura-Arroyo's sentences on counts 3 and 4 are based on incorrect criminal-history scores, they are illegal sentences.

### Conditional-Release Terms

Segura-Arroyo argues, and the state concedes, that the district court erred by imposing conditional-release terms on stayed sentences. We agree.

For child-pornography offenses, the law requires that "when a court commits a person to the custody of the commissioner of corrections" it must impose a conditional-release term. Minn. Stat. § 617.247, subd. 9 (2020). The district court stayed execution of Segura-Arroyo's sentences. Because the district court stayed execution of prison commitment, it erred by imposing conditional-release terms and he must be resentenced, absent the conditional-release terms.

In sum, we affirm the district court's denial of Segura-Arroyo's suppression motion. But because the district court erred in sentencing Segura-Arroyo via the *Hernandez* method for counts 3 and 4 and by imposing conditional-release terms for stayed sentences, we

reverse and remand for resentencing. *Woods*, 945 N.W.2d at 416-17 ("When a defendant's sentence is based on an incorrect criminal-history score, his case must be remanded for resentencing.").

**Affirmed in part, reversed in part, and remanded.**