STATE OF MINNESOTA

IN SUPREME COURT

A12-1189

Court of Appeals                                                                    Wright, J.

State of Minnesota,

                    Respondent,

vs.                                                                      Filed:  July 2, 2014
                                                            Office of Appellate Courts
Don Antoine Jones,

                    Appellant.

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Patrick J. Ciliberto, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

1.      Minnesota Statutes § 609.035, subd. 1 (2012), generally limits the number of sentences a defendant may receive for multiple convictions arising out of a single course of conduct.

2.      Minnesota Statutes § 518B.01, subd. 16 (2012), does not create an exception to Minn. Stat. § 609.035, subd. 1.

1

3.     If separate sentences are not precluded by Minn. Stat. § 609.035, subd. 1, the fact that the convictions involve a single course of conduct does not prevent a district court from imposing permissive consecutive sentences in accordance with Minn. Sent. Guidelines II.F.2.b (2010).

Reversed and remanded.

## O P I N I O N

WRIGHT, Justice.

In this case, we consider whether the statutory prohibition against multiple punishments in Minn. Stat. § 609.035, subd. 1 (2012), bars the imposition of separate sentences for multiple current felony convictions involving one victim and a single course of conduct when the Minnesota Sentencing Guidelines list the offenses as eligible for permissive consecutive sentences.[1]  Appellant Don Antoine Jones was charged in Scott County with stalking, a violation of Minn. Stat. § 609.749, subds. 2(4), 4(b) (2012), and violating an order for protection, a violation of Minn. Stat. § 518B.01, subd. 14(d)(1) (2012).  A jury returned two guilty verdicts, and Jones was convicted of both offenses. The district court imposed a sentence for each offense and ordered the two sentences to be served consecutively.  The court of appeals affirmed the sentences, and we granted Jones's petition for review.  Because we conclude that the district court and the court of

---

[1]     In the past, we have used the phrases "single course of conduct" and "single behavioral incident" interchangeably.  *See, e.g.*, *State v. Eaton*, 292 N.W.2d 260, 267 (Minn. 1980) (citation omitted).  Our use of the phrase "single course of conduct" in this opinion has the same meaning as the phrase "single behavioral incident."

appeals erred by conflating two distinct issues—whether separate sentences may be imposed and how separate sentences should be served—we reverse and remand to the district court with instructions to vacate the sentence imposed for violating an order for protection.

I.

Jones and S.J. met in 2003, had two children together, and married in 2009. S.J. decided to end their marriage in 2010. Thereafter, Jones caused S.J. to fear for her safety and the safety of their children. On October 11, 2010, S.J. sought and was granted an ex parte order for protection in accordance with Minn. Stat. § 518B.01 (2012). Two days later, Jones was served with that order.

On October 16, 2010, S.J. received 33 text messages from Jones between the hours of 10:00 p.m. and 12:30 a.m., while she was working at the Trail of Terror, a seasonal Halloween attraction in Shakopee. The messages indicated that Jones was in the vicinity and able to see S.J. For example, one message stated, "I see you; do you see me?" Another read, "I see Bob [a co-worker of S.J.]; tell him to get back to work." S.J. feared for her safety and contacted law enforcement. A Scott County deputy responded and searched the Trail of Terror unsuccessfully for Jones. At trial, the deputy testified that S.J. was "visibly shaken" after receiving Jones's messages.

Jones was charged in Scott County with stalking, Minn. Stat. § 609.749, subds. 2(4), 4(b), and violating an order for protection, Minn. Stat. § 518B.01, subd. 14(d)(1). Following a jury trial, Jones was convicted of both offenses. The State sought consecutive sentences that would run consecutively to a 57-month sentence Jones

3

was already serving for felony stalking in Ramsey County. In doing so, the State relied on the Minnesota Sentencing Guidelines, which permit consecutive sentences when a district court imposes separate sentences for multiple current felony convictions that are listed in section VI of the sentencing guidelines.[2] The district court imposed sentences of 18 months imprisonment for stalking and one year and one day for violating the order for protection. The district court further ordered those sentences to be served consecutively following the 57-month sentence that Jones was already serving. The district court specifically observed that each offense of conviction was on the list of offenses eligible for permissive consecutive sentences. *See* Minn. Sent. Guidelines VI (2010).

Jones appealed, challenging, among other things, the imposition of two consecutive sentences for the Scott County offenses. The court of appeals affirmed. *State v. Jones*, No. A12-1189, 2013 WL 2924263, at *5 (Minn. App. June 17, 2013). In its opinion, the court of appeals acknowledged that Minn. Stat. § 609.035, subd. 1, provides that if a person commits more than one offense during a single course of conduct, the person may be punished for only one of the offenses, subject to certain exceptions. *Jones*, 2013 WL 2924263, at *4. But the court of appeals concluded that it is irrelevant whether the offenses committed by Jones involved a single course of conduct because the offenses are on the sentencing guidelines list of offenses eligible for permissive consecutive sentences. *Id.* at *5 (citing Minn. Sent. Guidelines VI, cmt. II.F.203 (2010)).

---

[2]     We refer to the 2010 version of the Minnesota Sentencing Guidelines throughout this opinion because that version was in effect at the time of Jones's offenses.

We granted Jones's petition for further review.

## II.

We first consider whether the district court erred by imposing two sentences for Jones's conduct. Jones argues that, under Minn. Stat. § 609.035, subd. 1, the district court was required to impose a sentence on only one of his convictions because the convictions of stalking and violating an order for protection involved a single course of conduct.

Section 609.035, subdivision 1, provides that, "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses," subject to certain exceptions. Therefore, deciding whether the district court's imposition of two sentences was barred by section 609.035, subdivision 1, requires us to determine first whether the conduct underlying the offenses involved a single course of conduct. *See State v. Johnson*, 273 Minn. 394, 399, 141 N.W.2d 517, 521-22 (1966). If so, we then consider whether an exception to section 609.035, subdivision 1, applies.

## A.

Whether a defendant's offenses occurred as part of a single course of conduct is a mixed question of law and fact. *State v. Kendell*, 723 N.W.2d 597, 607 (Minn. 2006). We review the district court's findings of historical fact under the clearly erroneous standard, but we review the district court's application of the law to those facts de novo. *See State v. Sterling*, 834 N.W.2d 162, 167-68 (Minn. 2013). Whether a defendant's multiple offenses occurred during a single course of conduct depends on the facts and

5

circumstances of the case. *State v. Hawkins*, 511 N.W.2d 9, 13 (Minn. 1994). Offenses are part of a single course of conduct if the offenses occurred at substantially the same time and place and were motivated by a single criminal objective. *Johnson*, 273 Minn. at 405, 141 N.W.2d at 525.

Based on the undisputed facts presented here, Jones's offenses occurred at substantially the same time and place and were motivated by a single criminal objective. The 33 text messages that Jones sent to S.J. between the hours of 10:00 p.m. and 12:30 a.m. comprise the conduct underlying Jones's offenses of both stalking and violating an order for protection. S.J. received all of the messages while she was working at the Trail of Terror. Although the precise time that each message was sent is not in the record, a series of 33 messages over two and one-half hours amounts to a rate of approximately one message every four minutes.

Jones's conduct also reflects a singular intent to intimidate and harass S.J. In deciding whether crimes were committed with a single criminal objective, we examine the relationship of the crimes to each other. *State v. Bauer*, 792 N.W.2d 825, 829 (Minn. 2011). Broad statements of criminal purpose do not unify separate acts into a single course of conduct. *See, e.g.*, *Bauer*, 792 N.W.2d at 830 (sharing drugs with friends for no profit was not a single criminal objective); *State v. Gould*, 562 N.W.2d 518, 521 (Minn. 1997) (making as much money as possible was not a single criminal objective); *State v. Gilbert*, 262 N.W.2d 334, 338 (Minn. 1977) ("general hatred of women" was too broad to constitute a single criminal objective). But acts "motivated by a continuous intent to harass" a particular person over the course of a few hours evince a single

6

criminal purpose. *State v. Mullen*, 577 N.W.2d 505, 511 (Minn. 1998). Here, it was Jones's objective to harass S.J. when he sent her 33 text messages during a period of two and one-half hours. This objective is sufficiently specific to constitute a single criminal objective.

The State seeks to establish that, because the messages were sent over a period of two and one-half hours and because the Trail of Terror spans a large area, the offenses did not occur at the same time and place. But the cases cited by the State include circumstances that are distinguishable from those presented here. For example, in *State v. Shevchuk*, we concluded that the crimes of assault, robbery, and unauthorized use of a motor vehicle, which were committed over a period of about two and one-half hours, were not part of a single course of conduct under section 609.035. 282 Minn. 182, 184-86, 163 N.W.2d 772, 774-76 (1968). But in *Shevchuk*, we considered more than the length of time during which the offenses were committed. *Id.* at 187-88, 163 N.W.2d at 776. We also considered that the victim's car was driven to several locations, that the crimes occurred at "clearly separate times," and that there was no "single criminal objective" among the offenses. *Id.* at 186-88, 163 N.W.2d at 775-76. Unlike the defendant in *Shevchuk*, Jones did not subject S.J. to multiple distinct crimes during the two-and-a-half-hour period. Rather, he sent a series of text messages to S.J. at a rate averaging one message every four minutes. *See Mullen*, 577 N.W.2d at 511 (stating that harassing telephone calls and breaking a window within a few hours shared unity of time and place). Similarly, the facts regarding the locations of the offenses in *State v. Bookwalter*, 541 N.W.2d 290 (Minn. 1995), are distinguishable from those presented

here. In *Bookwalter*, the defendant sexually assaulted his victim in one location before driving her "approximately a mile and a half to two miles" to a different location where he attempted to murder her. *Id.* at 292. By contrast, Jones committed both offenses at S.J.'s workplace. That her workplace—the Trail of Terror—spans a large area does not support a determination that Jones committed the offenses in different locations.

Because the State did not prove that the series of text messages is divisible either by time and place or by criminal objective, we conclude that the conduct underlying Jones's convictions for stalking and violating an order for protection involved a single course of conduct for purposes of section 609.035, subdivision 1.

B.

The imposition of two separate sentences for convictions involving a single course of conduct is prohibited by section 609.035, subdivision 1, unless an exception applies. Such exceptions are found in several statutes and in our case law. Section 609.035, subdivision 1, includes exceptions for several offenses. Other statutory exceptions are not listed in section 609.035.[3] But each of these other statutory exceptions specifically

---

[3] For example, section 609.035 includes exceptions for kidnapping, solicitation of juveniles, and fleeing a peace officer, Minn. Stat. § 609.035, subds. 1, 5, but other exceptions exist for methamphetamine-related crimes involving children and vulnerable adults, Minn. Stat. § 152.137, subd. 4 (2012); aggravated witness tampering, Minn. Stat. § 609.498, subd. 4 (2012); and the failure to render aid to one's shooting victim, Minn. Stat. § 609.662, subd. 2(c) (2012).

refers to section 609.035.[4]  A judicially created exception to section 609.035, subdivision 1, exists for offenses involving multiple victims.  *State v. Ferguson*, 808 N.W.2d 586, 589-90 (Minn. 2012).

The State argues that the Domestic Abuse Act, Minn. Stat. § 518B.01 (2012), provides an additional exception to section 609.035, subdivision 1.  Under the Domestic Abuse Act, a victim of domestic abuse may file a petition for an order for protection in the district court that has jurisdiction.  Minn. Stat. § 518B.01, subds. 3-4.  Moreover, "[a] person who violates an order for protection . . . is subject to [certain criminal] penalties." Minn. Stat. § 518B.01, subd. 14(a).  The State asserts that section 518B.01, subdivision 16, permits a district court to impose separate sentences for a violation of an order for protection and any other criminal act committed as part of a single course of conduct. But section 518B.01, subdivision 16, does not include the language, "notwithstanding section 609.035," that is present in other statutory exceptions.  Rather, section 518B.01, subdivision 16, provides that "[a]ny proceeding under this section shall be in addition to other civil or criminal remedies."  The State argues that the plain language of section 518B.01, subdivision 16, "clarifies that a conviction and sentence for violating the

---

[4]     *See, e.g.*, Minn. Stat. § 152.137, subd. 4 ("Notwithstanding sections 609.035 and 609.04, a prosecution for or conviction under this section is not a bar to conviction of or punishment for any other crime committed by the defendant as part of the same conduct."); Minn. Stat. § 609.498, subd. 4 ("Notwithstanding section 609.035 or 609.04, a prosecution for or conviction of the crime of aggravated first-degree witness tampering is not a bar to conviction of or punishment for any other crime."); Minn. Stat. § 609.662, subd. 2(c) ("Notwithstanding section 609.035 or 609.04, a prosecution for or conviction under this subdivision is not a bar to conviction of or punishment for any other crime committed by the defendant as part of the same conduct.").

Domestic Abuse Act is 'in addition to other . . . criminal remedies.' " Implicit in this argument is an assumption that the language of section 518B.01, subdivision 16—"[a]ny proceeding under this section"—includes a criminal prosecution for violating an order for protection.

Whether section 518B.01, subdivision 16, creates an additional exception to the prohibition in section 609.035 against imposing multiple punishments for a single course of conduct presents an issue of statutory interpretation. Statutory interpretation is a question of law, which we review de novo. *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 56 (Minn. 2013). The goal of statutory interpretation is to effectuate the intent of the Legislature. *Brayton v. Pawlenty*, 781 N.W.2d 357, 363 (Minn. 2010); *accord* Minn. Stat. § 645.16 (2012). We construe the statute as a whole and give effect to all of its provisions. *State v. Watkins*, 840 N.W.2d 21, 29 (Minn. 2013). The first step in statutory interpretation is to determine whether the statute is ambiguous on its face. *Larson v. State*, 790 N.W.2d 700, 703 (Minn. 2010). "A statute is ambiguous only when the statutory language is subject to more than one reasonable interpretation." *State v. Fleck*, 810 N.W.2d 303, 307 (Minn. 2012). When the Legislature's intent is discernible from plain and unambiguous language, statutory construction is neither necessary nor permitted; and courts apply the statute's plain meaning. *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). We construe words and phrases according to their plain and ordinary meanings. *Fleck*, 810 N.W.2d at 307; *State v. Peck*, 773 N.W.2d 768, 772 (Minn. 2009).

Our analysis begins with the language of section 518B.01, subdivision 16, which

10

provides, "[a]ny *proceeding under this section* shall be in addition to other civil or criminal remedies." (Emphasis added.) According to its ordinary meaning, a "proceeding" is a "procedural means for seeking redress from a tribunal or agency." *Black's Law Dictionary* 1398 (10th ed. 2014); *see also State v. Hohenwald*, 815 N.W.2d 823, 830 (Minn. 2012) ("The word 'proceedings' generally refers to 'the course of procedure in a judicial action or in a suit in litigation' . . . ." (quoting *Webster's Third New International Dictionary of the English Language Unabridged* 1807 (2002))). By contrast, the ordinary meaning of "remedy" is a "means of enforcing a right or preventing or redressing a wrong." *Black's Law Dictionary* 1485 (10th ed. 2014).

Applying the plain meaning of "proceeding," we conclude that the phrase "[a]ny proceeding under this section" does not refer to a criminal prosecution for an alleged violation of Minn. Stat. § 518B.01, subd. 14. Section 518B.01, subdivision 14, creates a criminal offense. That is a *substantive means* of redressing a violation of an order for protection, not a *procedural means* of seeking redress of that offense from a tribunal or agency. The procedural means for seeking redress for a criminal offense, including a violation of an order for protection, is set forth in the Minnesota Rules of Criminal Procedure and several statutes, including Minn. Stat. § 484.87 (2012) (prescribing the pleading, practice, and procedure in criminal proceedings); Minn. Stat. §§ 628.01-.26 (2012) (prescribing the procedural requirements for a criminal indictment); Minn. Stat. §§ 630.12-.37 (2012) (prescribing pretrial procedures in a criminal case); and Minn. Stat. §§ 631.02-.21 (2012) (prescribing trial procedures in a criminal case). Section 518B.01 does not provide the procedural means to criminally prosecute a violation of an

11

order for protection. Rather, section 518B.01, subdivision 4, provides a procedural means to seek an order for protection. By its terms, section 518B.01, subdivision 4, creates "an action known as a petition for an order for protection" and then sets forth the procedure that a private party may use to obtain an order for protection from a district court that has jurisdiction. Accordingly, the phrase "[a]ny proceeding under this section" as used in section 518B.01, subdivision 16, does not refer to a criminal prosecution for violating an order for protection. Rather, that phrase refers to an action to obtain an order for protection from a court that has jurisdiction. Because the phrase "[a]ny proceeding under this section" does not refer to a criminal prosecution for violating an order for protection, we reject the State's contention that a criminal conviction and sentence for violation of an order for protection are "in addition to other . . . criminal remedies" within the meaning of section 518B.01, subdivision 16.

In sum, the plain language of section 518B.01, subdivision 16, provides that an action seeking an order for protection shall be in addition to other civil or criminal remedies. It does not provide that a criminal prosecution for violating an order for protection shall be in addition to other civil or criminal remedies. For these reasons, section 518B.01, subdivision 16, does not create an additional exception to the prohibition against imposing multiple punishments for a single course of conduct found in section 609.035, subdivision 1. Because such an exception does not apply to Jones, section 609.035, subdivision 1, bars the imposition of two separate sentences in his case.

III.

We next consider whether the imposition of two separate sentences for Jones's

12

conduct was within the district court's discretion under the Minnesota Sentencing Guidelines. Because we conclude that section 609.035, subdivision 1, precludes the imposition of multiple sentences for Jones's conduct, we reject the State's argument that the imposition of separate consecutive sentences was within the discretion of the district court under the sentencing guidelines.

Section II.F.2.b of the Minnesota Sentencing Guidelines provides that "[m]ultiple current felony convictions for crimes on the list of offenses eligible for permissive consecutive sentences found in Section VI may be sentenced consecutively to each other." Minn. Sent. Guidelines II.F.2.b (2010). The parties do not dispute that both offenses of which Jones was convicted—violating an order for protection under Minn. Stat. § 518B.01, subd. 14(d), and stalking under Minn. Stat. § 609.749, subd. 4—appear on the list of offenses eligible for permissive consecutive sentences. Minn. Sent. Guidelines VI (2010). Moreover, comment II.F.203 of the Minnesota Sentencing Guidelines provides that consecutive sentencing is permissive under section II.F.2.b "even when the offenses involve a single victim involving a single course of conduct." Minn. Sent. Guidelines cmt. II.F.203.

The State argues, and the court of appeals agreed, that the imposition of consecutive sentences by the district court was proper because consecutive sentences for stalking and violating an order for protection are expressly permitted under section II.F.2.b of the Minnesota Sentencing Guidelines. Citing comment II.F.203, the court of appeals concluded that it is irrelevant whether the offenses committed by Jones involved a single course of conduct for purposes of Minn. Stat. § 609.035, subd. 1, because the

13

offenses were on the sentencing guidelines list of offenses eligible for permissive consecutive sentences. For the reasons that follow, we conclude that the court of appeals erred in its interpretation of section II.F.2.b and comment II.F.203 of the Minnesota Sentencing Guidelines.

The interpretation of the sentencing guidelines presents a question of law, which we review de novo. *State v. Williams*, 771 N.W.2d 514, 520 (Minn. 2009). We apply the rules of statutory construction to our interpretation of the sentencing guidelines. *State v. Campbell*, 814 N.W.2d 1, 4 (Minn. 2012). When there is an apparent conflict between two provisions, we first attempt to construe the provisions to give effect to both. Minn. Stat. § 645.26, subd. 1 (2012). We follow the Minnesota Sentencing Guidelines unless the applicable provision is contrary to statute. If it is impossible to harmonize the sentencing guidelines with an applicable statute, the statutory provision will control. Comments to the sentencing guidelines, however, are advisory and are not binding on the courts. *Asfaha v. State*, 665 N.W.2d 523, 526 (Minn. 2003).

When a defendant is convicted of multiple offenses, two issues that are germane to sentencing arise: (1) the number of sentences to be imposed, and (2) if multiple sentences are imposed, whether the sentences will be served concurrently or consecutively.[5] Minnesota Statutes section 609.035, subdivision 1, governs the number of sentences a district court may impose for multiple convictions arising from a single

---

[5] "A consecutive sentence is one which does not begin to run until the expiration of the term of the prior sentence." *State v. Petersen*, 305 Minn. 478, 480-81, 235 N.W.2d 801, 803 (1975). By contrast, concurrent sentences "are served simultaneously." *Id.* at 481, 235 N.W.2d at 803.

14

course of conduct. By contrast, section II.F of the Minnesota Sentencing Guidelines focuses squarely on the second issue—how multiple separate sentences are to be served. Section II.F creates several presumptions regarding consecutive and concurrent sentences. Section II.F provides that "[g]enerally, when an offender is convicted of multiple current offenses . . . concurrent sentencing is presumptive." Minn. Sent. Guidelines II.F (2010). Section II.F.2 provides several exceptions to the general presumption in favor of concurrent sentencing. Minn. Sent. Guidelines II.F.2. Among these exceptions is the provision at issue here, Minn. Sent. Guidelines II.F.2.b, which permits the district court to impose consecutive sentences without departure for offenses listed in section VI.

Because Minn. Stat. § 609.035, subd. 1, addresses the number of sentences that may be imposed for multiple current felony convictions and Minn. Sent. Guidelines II.F.2.b addresses whether multiple sentences will be served concurrently or consecutively, the two provisions operate in tandem and do not conflict. The correct analysis at sentencing, therefore, requires the district court first to determine whether multiple sentences are permitted under section 609.035, subdivision 1. If multiple sentences are permitted—because the convictions did not arise from a single course of conduct or the case implicates an exception to section 609.035, subdivision 1—then Minn. Sent. Guidelines II.F governs the district court's decision regarding whether the sentences will be served concurrently or consecutively. If, however, the convictions involve a single course of conduct and no exception to section 609.035, subdivision 1, applies, then the district court must impose a single sentence for the more serious

15

offense.[6]

This interpretation is consistent with Minnesota Sentencing Guidelines comment II.F.203. Comment II.F.203 states that "[c]onsecutive sentencing is permissive [under section II.F.b] even when the offenses involve a single victim involving a single course of conduct." We construe this nonbinding language as anticipating and rejecting the argument that, even when multiple sentences are permitted under an exception to Minn. Stat. § 609.035, subd. 1, and consecutive sentences are permitted under Minn. Sent. Guidelines II.F.2, consecutive sentences should not be imposed when the offenses involve a single course of conduct.[7]

In sum, the court of appeals erred when it concluded that, because the offenses were on the sentencing guidelines list of offenses eligible for permissive consecutive sentences, it is irrelevant whether multiple sentences were authorized under Minn. Stat.

---

[6]  Section 609.035, subdivision 1, contemplates that a defendant should be sentenced only for the most serious offense arising from a single course of conduct because "imposing up to the maximum punishment for the most serious offense will include punishment for all offenses." *State v. Kebaso*, 713 N.W.2d 317, 322 (Minn. 2006) (citations omitted) (internal quotation marks omitted).

[7]  Such an argument might arise, for example, when a defendant commits criminal sexual conduct with force and another crime against a single victim during a single course of conduct. Although the exception in Minn. Stat. § 609.035, subd. 6 (2012), would allow separate sentences for each offense, the defendant might argue that the sentences should be imposed concurrently based on an assertion that consecutive sentences would result in an unduly severe punishment for offenses committed during a single course of conduct. Comment II.F.203 rejects that logic and indicates that consecutive sentences would be permitted under such circumstances. Moreover, Minn. Stat. § 609.035, subd. 6, states that "[i]f an offender is punished for more than one crime as authorized by this subdivision and the court imposes consecutive sentences for the crimes, the consecutive sentences are not a departure from the Sentencing Guidelines."

§ 609.035, subd. 1. Because section 609.035, subdivision 1, bars the imposition of two sentences in this case, we reverse the sentence imposed for violating an order for protection and remand to the district court with instructions to vacate that sentence.

IV.

Jones argues for the first time in his brief to this court that the district court erred by convicting him of multiple offenses arising from the same conduct. We generally will not consider arguments raised for the first time on appeal. *Ferguson v. State*, 645 N.W.2d 437, 448 (Minn. 2002). Jones had the opportunity to challenge the entry of multiple convictions at both the district court and the court of appeals. But he did not do so. Accordingly, we decline to address this issue on appeal.

Reversed and remanded.