*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-1710**
**A23-0163**

Jose Armando Padilla, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed January 16, 2024**
**Affirmed**
**Cochran, Judge**

Kandiyohi County District Court
File No. 34-CR-17-704

Zachary A. Longsdorf, Longsdorf Law Firm, PLC, Inver Grove Heights, Minnesota (for appellant)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Shane D. Baker, Kandiyohi County Attorney, Willmar, Minnesota (for respondent)

Considered and decided by Cochran, Presiding Judge; Slieter, Judge; and Larson, Judge.

**NONPRECEDENTIAL OPINION**

**COCHRAN**, Judge

This consolidated appeal arises from two related district court orders addressing appellant's motion to correct his sentence based on an incorrect criminal-history score and for resentencing. Appellant argues that the district court abused its discretion when it

denied in part his motion to correct his criminal-history score and declined to resentence him on that basis.  Appellant also contends that the district court abused its discretion when it declined to reduce his sentence based on time served in custody in another court-case file.  Because we discern no abuse of discretion by the district court in its decisions related to appellant's criminal-history score and sentence, we affirm.

## FACTS

On July 25, 2017, respondent State of Minnesota charged appellant Jose Armando Padilla with three counts: (1) first-degree sale of 17 grams or more of methamphetamine, in violation of Minn. Stat. § 152.021, subd. 1(1) (2016); (2) first-degree possession of 50 grams or more of methamphetamine, in violation of Minn. Stat. § 152.021, subd. 2(a)(1) (2016); and (3) fifth-degree possession of cocaine, in violation of Minn. Stat. § 152.025, subd. 2(1) (2016).  The complaint alleged that law enforcement discovered 374.3 grams of methamphetamine, 4.4 grams of cocaine, and plastic baggies used to contain the drugs during a search of Padilla's home.  Law enforcement conducted the search after Padilla tested positive for methamphetamine while on supervised release.

Padilla pleaded guilty to the first-degree possession charge (count 2) pursuant to a plea agreement with the state.  Under the terms of the agreement, the state agreed to dismiss the other two counts and the parties agreed to a 128-month "middle of the box" sentence. The district court ordered a presentence investigation report (PSI) and scheduled the matter for sentencing.

The PSI showed a criminal-history score of 11 points. The PSI indicated that Padilla had ten felony points[1] based on his prior felony convictions, plus one custody status point for committing a felony while on supervised release. *See* Minn. Sent'g Guidelines 2.B.2.a(1)-(3) (2016) (providing, in relevant part, that one custody status point should be assigned when an offender commits a felony while on supervised release for a felony conviction). The felony points included in Padilla's score are listed below:

| Offense | Felony Points | Disposition Date |
| --- | --- | --- |
| Terroristic Threats (K8-01-369) | 1.0 | 04/2002 |
| Theft | 1.0 | 04/2002 |
| Arson Second Degree | 1.0 | 04/2002 |
| Terroristic Threats (K8-01-280) | 1.0 | 04/2002 |
| Controlled Substance Fifth Degree-Possession | 0.5 | 06/2005 |
| Receiving Stolen Property | 1.0 | 12/2005 |
| Criminal Damage to Property First Degree | 0.5 | 12/2005 |
| Dangerous Weapon-Drive by Shooting (unoccupied) | 1.0 | 11/2007 |
| Assault First Degree-Great Bodily Harm | 2.0 | 11/2007 |
| Dangerous Weapon-Drive by Shooting (occupied) | 1.5 | 11/2007 |

On October 9, 2017, the district court sentenced Padilla to 128 months in prison, which included a three-month custody enhancement. *See* Minn. Sent'g Guidelines 2.B.2.c (2016) (providing that "[a]n additional three months must be added to the" presumptive sentence, creating a new presumptive sentence, when "a custody status point is assigned"

---

[1] Padilla's felony points were rounded down from 10.5 to 10, consistent with the Minnesota Sentencing Guidelines. *See* Minn. Sent'g Guidelines 2.B.1.i (2016) ("If the sum of the weights results in a partial point, the point value must be rounded down to the nearest whole number.").

and the offender's criminal-history score is seven or more).  The sentence was consistent with the parties' agreement.

Relevant to this appeal, Padilla's criminal-history score includes points for three 2005 felony convictions from a separate case arising from Padilla's involvement in two drive-by shootings.  *State v. Padilla*, No. A21-0377, 2021 WL 3278014, at *1 (Minn. App. Aug. 2, 2021).  In that case, Padilla was originally convicted of six offenses: two counts of attempted second-degree murder by drive-by shooting and one count each of first-degree assault, drive-by shooting of an occupied building, drive-by shooting of an unoccupied building, and receiving stolen property.  *Id.*  Padilla appealed, and we reversed his attempted second-degree murder convictions.  *State v. Padilla*, No. A06-446, 2007 WL 1746746, at *1 (Minn. App. June 19, 2007).  On remand, the district court vacated those convictions and resentenced Padilla on the remaining convictions.  *State v. Padilla*, No. A08-0224, 2009 WL 749171, at *1 (Minn. App. Mar. 24, 2009), *rev. denied* (Minn. May 27, 2009).  Padilla then challenged his new sentence several times, which resulted in corrections to his sentence.  *See id.*; *Padilla v. State*, No. A15-0573, 2015 WL 7357311, at *2 (Minn. App. Nov. 23, 2015); *Padilla v. State*, No. A18-1689, 2019 WL 3000726, at *1 (Minn. App. July 8, 2019); *Padilla*, 2021 WL 3278014, at *1.  In one of the appeals, this court acknowledged that the first-degree assault and drive-by shooting of an occupied building were part of the same behavioral incident but determined that Padilla was properly sentenced for both under the multiple-victim exception to the rule prohibiting separate sentences for offenses committed during the same behavioral incident.  *Padilla*, 2009 WL 749171, at *1-2.  Following another appeal, the district court determined on remand that

4

the receipt of stolen property was part of the same behavioral incident as the first-degree assault and the drive-by shooting of an occupied building, and it vacated his sentence for receipt of stolen property. *Padilla*, 2021 WL 3278014, at *1. As a result of the litigation, Padilla was left with three separate sentences in the drive-by-shooting case—one for first-degree assault, one for drive-by shooting of an occupied building, and one for drive-by shooting of an unoccupied building—which amounted to 203 months in prison. *See id.*

On May 25, 2022, Padilla filed a motion to correct his sentence and for resentencing in *this* case. Padilla argued that the criminal-history score used to support his 128-month sentence for first-degree drug possession is incorrect for the following reasons: (1) the receipt-of-stolen-property conviction was improperly included in his criminal-history score because his sentence for that conviction had been vacated; (2) the conviction for drive-by shooting of an unoccupied building was improperly included in his criminal-history score because that crime was part of the same behavioral incident as the crimes of drive-by shooting of an occupied building and first-degree assault; (3) the one-half felony point for fifth-degree possession was improperly included in his criminal-history score because there had been a change to the criminal code which reclassified some felonies as gross misdemeanors; (4) one of the two felony points for terroristic threats was improperly included because the conviction had decayed; and (5) the custody status point was improperly included in his criminal-history score in light of a change in the sentencing guidelines. He requested that the district court resentence him based on a corrected criminal-history score, making the above adjustments. He also argued that the district court

5

should reduce his sentence due to sentencing errors in the drive-by-shooting case which resulted in him serving extra time in prison in that case.

The district court issued a preliminary order granting in part and denying in part Padilla's motion. The district court addressed each of Padilla's arguments in turn. First, the district court concluded that the felony point for receipt of stolen property should be removed from Padilla's criminal-history score because his sentence for that offense had been vacated. Second, the district court determined that the felony point for drive-by shooting of an unoccupied building was properly included in his criminal-history score because that offense was not part of the same behavioral incident as the drive-by shooting of an occupied building. Third, the district court concluded that the record was insufficient to determine whether the one-half felony point for fifth-degree possession of marijuana should have been included in Padilla's criminal-history score, and it scheduled a hearing to allow the state to supplement the record. Fourth, the district court concluded that the felony point for terroristic threats was properly included in his criminal-history score because the conviction had not decayed. Fifth, the district court determined that the custody-status point was properly assigned to Padilla because the change in the sentencing guidelines did not apply in Padilla's circumstances. Finally, the district court determined that Padilla was not entitled to a reduction in his sentence in this case for the extra time he allegedly served in the drive-by-shooting case.

Following a hearing to develop the record on the fifth-degree-possession issue, the district court issued a final order granting in part and denying in part Padilla's request to correct his criminal-history score and denying his request for resentencing. The order

resolved the outstanding issues. The district court first concluded that the one-half felony point for fifth-degree possession of a controlled substance was properly included in Padilla's criminal-history score because the state's exhibits established that the conviction was based on Padilla's possession of 976 grams of marijuana, which was a felony under the laws that were in effect at the time the offense was committed and when the district court considered Padilla's motion to correct his sentence. The district court then determined that Padilla's criminal-history score should be corrected to reflect Padilla's vacated sentence for receipt of stolen property, thereby reducing his total criminal-history score from 11 to 10 points. But the district court declined Padilla's request for resentencing because the reduction in Padilla's criminal-history score from 11 to 10 did not change his presumptive sentence.

Padilla filed appeals from both the district court's preliminary order and the final order, and we granted his motion to consolidate the appeals.

## DECISION

Padilla argues that the district court abused its discretion by partially denying his motion to correct his sentence and by declining to reduce his sentence based on the amount of time that he served in custody in the drive-by-shooting case. We consider each argument in turn.

**I. The district court did not abuse its discretion by partially denying Padilla's motion to correct his sentence.**

Under Minnesota law, courts "may at any time correct a sentence not authorized by law." Minn. R. Crim. P. 27.03, subd. 9. A sentence based on an incorrect criminal-history

score is not authorized by law. *State v. Woods*, 945 N.W.2d 414, 416 (Minn. App. 2020) (citing *State v. Maurstad*, 733 N.W.2d 141, 147 (Minn. 2007)). We review a district court's denial of a motion to correct a sentence and a district court's calculation of a defendant's criminal-history score for an abuse of discretion, but we review de novo the district court's legal conclusions. *Townsend v. State*, 834 N.W.2d 736, 738 (Minn. 2013); *State v. Oreskovich*, 915 N.W.2d 920, 926 (Minn. App. 2018).

Padilla asserts that the district court improperly included points in his criminal-history score for: (1) the crime of drive-by shooting (unoccupied building), (2) one of two terroristic-threats convictions, and (3) custody status.[2] As a result, he argues that his score should be reduced from ten to seven. We consider each of these challenges to Padilla's criminal-history score in turn.

---

[2] Padilla does not challenge the district court's determination that the one-half felony point for fifth-degree possession of marijuana was properly included in his criminal-history score, but he does contend that "the district court erred in allowing the prosecution to supplement the record." Padilla's assertion that the district court erred by allowing the state to supplement the record is unavailing. *See State v. Outlaw*, 748 N.W.2d 349, 356 (Minn. App. 2008) (reversing and remanding the district court's sentencing decision and noting that the state would be able "to further develop the sentencing record" on remand to allow the district court to "appropriately make its [sentencing] determination"), *rev. denied* (Minn. July 15, 2008).

Padilla further contends that his conviction of fifth-degree possession of marijuana "would likely no longer be a felony" in light of recent changes to the criminal code, suggesting that the one-half felony point assessed for this offense was improperly included in his criminal-history score. Padilla did not raise this argument before the district court. Therefore, we need not consider it. *Azure v. State*, 700 N.W.2d 443, 447 (Minn. 2005) ("It is well settled that a party may not raise issues for the first time on appeal from denial of postconviction relief." (quotation omitted)). Padilla may file a separate motion to correct his sentence based on recent legislative changes if he believes such a motion is supported by law and fact.

**A.    The district court did not abuse its discretion by assigning Padilla one felony point for his conviction of drive-by shooting of an unoccupied building.**

Padilla first argues that the district court abused its discretion by assigning him one felony point for the drive-by shooting of an unoccupied building because that offense was part of the same course of conduct as the drive-by shooting of an occupied building and first-degree assault.  The state contends that the felony point for the drive-by shooting of an unoccupied building was properly included in his criminal-history score because it occurred during a separate behavioral incident.  We agree with the state.

The sentencing guidelines provide instructions for calculating a defendant's criminal-history score.  A defendant's criminal-history score consists of the sum of points from eligible prior offenses and from the defendant's custody status at the time the defendant committed the offense at issue.  Minn. Sent'g Guidelines 2.B (2016).  Generally, when a defendant is sentenced for multiple offenses on the same day, as Padilla was in the drive-by-shooting case, points for the defendant's previously sentenced offenses are included in the defendant's criminal-history score for subsequently sentenced offenses.  *State v. Williams*, 771 N.W.2d 514, 521 (Minn. 2009).  But an exception exists when multiple offenses "aris[e] from a single course of conduct involving multiple victims."  Minn. Sent'g Guidelines 2.B.1.d(2) (2016).  In these cases, only the weights from the two offenses at the highest severity levels are included in the defendant's criminal-history score.  *Id.*

When calculating Padilla's criminal-history score, the district court assigned points for three offenses from the drive-by-shooting case—first-degree assault, drive-by shooting

9

of an occupied building, and drive-by shooting of an unoccupied building. The district court did so based on its conclusion that the two drive-by shootings did not arise from the same course of conduct and therefore did not fall within the sentencing exception for "multiple offenses arising from a single course of conduct involving multiple victims." *Id.* The question before us is whether the district court abused its discretion when it determined that the offense of drive-by shooting of an unoccupied building did not arise from the same course of conduct as the other two offenses. To answer this question, we consider caselaw analyzing the single-course-of-conduct rule under Minnesota Statutes section 609.035 (2016).[3] *See, e.g.*, *State v. Drljic*, 876 N.W.2d 350, 352-54 (Minn. App. 2016) (relying on

---

[3] Section 609.035, subdivision 1, generally prohibits the district court from imposing multiple sentences "for two or more offenses that were committed as part of a *single behavioral incident*." *State v. Kebaso*, 713 N.W.2d 317, 322 (Minn. 2006) (emphasis added). The supreme court has interpreted the phrase "single behavioral incident" as synonymous with the phrase "a single course of conduct"—the language used in the sentencing guidelines. *Compare State v. Jones*, 848 N.W.2d 528, 534 (Minn. 2014) (stating that section 609.035, subdivision 1, prohibits "the imposition of two separate sentences for convictions involving a single course of conduct . . . unless an exception applies") *with* Minn. Sent'g Guidelines 2.B.1.d(2) (providing that, when a defendant is being sentenced for "multiple offenses arising from a single course of conduct involving multiple victims," the sentencing authority must include in the defendant's criminal-history score only the two most severe offenses); *see also* Minn. Sent'g Guidelines 2.B.116 (2016) ("Legal authorities use the terms 'single course of conduct' and 'single behavioral incident' interchangeably. In the Guidelines, this is referred to as 'single course of conduct.'"). On appeal, Padilla is not challenging the imposition of multiple sentences for first-degree assault, drive-by shooting of an occupied building, and drive-by shooting of an unoccupied building under section 609.035. Instead, Padilla is arguing that the two drive-by-shooting offenses and the assault offense were part of the same course of conduct and that the least severe of these offenses (drive-by shooting of an unoccupied building) therefore should be excluded from his criminal-history score. *See* Minn. Sent'g Guidelines 2.B.1.d(2). Accordingly, we use the phrase "single course of conduct," not "single behavioral incident," throughout our analysis.

caselaw under section 609.035 to determine whether the district court correctly calculated defendant's criminal-history score under the sentencing guidelines).

Whether multiple offenses were part of a single course of conduct presents a mixed question of fact and law. *Jones*, 848 N.W.2d at 533. We review factual findings for clear error and legal conclusions de novo. *Id.* Multiple offenses are part of a single course of conduct if they (1) "occurred at substantially the same time and place," and (2) "were motivated by a single criminal objective." *Id.* The state bears the burden of proving at sentencing that a previous conviction should be included in the defendant's criminal-history score. *Williams v. State*, 910 N.W.2d 736, 740 (Minn. 2018). But, after the time for direct appeal has passed, "the defendant bears the burden of proving that his or her sentence was based on an incorrect criminal-history score." *Id.* at 743. Here, the time for direct appeal has passed. Accordingly, Padilla bears the burden of proving that his criminal-history score is incorrect. *See id.*

Padilla argues that the district court erred by concluding that the drive-by shootings were not part of the same course of conduct because "the district court reached the exact opposite conclusion" in the drive-by-shooting case. Padilla relies on an order in the drive-by-shooting case in which the district court determined that Padilla could not be sentenced for receipt of stolen property because that offense was "part of the same behavioral incident as the drive-by shootings." Padilla contends that this determination is binding "law of the case." We are not persuaded.

"Law-of-the-case doctrine is limited to the *same case* and to only the issue previously decided and is not intended to be carried into other cases as precedent."

*State v. Miller*, 849 N.W.2d 94, 98 (Minn. App. 2014) (quotation omitted). The order relied upon by Padilla was filed in the drive-by-shooting case, not in the current case involving Padilla's drug offense. Moreover, while the order addresses a similar issue— whether the receipt of stolen property and the drive-by shootings were part of the same behavioral incident—the order does not focus on the precise question that the district court considered here: whether the drive-by shootings were part of the same course of conduct. Thus, the order does not reflect the law of the case in this matter. *See id.*

In this case, the district court made several findings to support its decision. First, the district court found that the shootings "were separated by over one mile's distance," were "in completely different neighborhoods"—a mobile home in Regency Estates West and a residence on Gorton Avenue—and "occurred several minutes apart." Second, the district court found that "one participant knew the mobile home was not occupied and the . . . residence was occupied," and determined, based on the participant's testimony, that "[t]he same criminal objective did not link the shootings of the empty mobile home to the residence with eight persons inside." Padilla does not challenge these findings on appeal. To the contrary, Padilla appears to accept the district court's finding regarding the distance and time that elapsed between the shootings, and he does not challenge the district court's reliance on the participant's testimony about whether the residences were occupied. Instead, he argues that these facts do not support the district court's conclusion that the two drive-by shootings were part of the same course of conduct. We disagree.

The district court's undisputed findings are sufficient to sustain its conclusion that the drive-by shootings were not party of the same course of conduct. These findings

establish that: (1) the first shooting occurred at an unoccupied mobile home in Regency Estates West, while the second shooting occurred at an occupied residence on Gorton Avenue; (2) the mobile home and the residence were approximately one mile apart from one another and that several minutes elapsed between the shootings; and (3) one of the participants in the shootings knew that the mobile home was unoccupied and that the residence was occupied. Taken together, these facts sufficiently demonstrate that the drive-by shootings were not united by time, place, or purpose and therefore were not part of the same course of conduct. *See Munt v. State*, 920 N.W.2d 410, 417-18 (Minn. 2018) (concluding that several offenses committed within a 30-minute period were not part of the same course of conduct because they were motivated by different criminal objectives); *cf. Jones*, 848 N.W.2d at 533 ("Broad statements of criminal purpose do not unify separate acts into a single course of conduct."). We therefore conclude that Padilla has not met his burden of proving that the district court abused its discretion by assigning felony points for both shootings. *See Williams*, 910 N.W.2d at 743.

### B. The district court did not abuse its discretion by assigning Padilla one felony point for each of his terroristic-threats convictions.

Padilla next contends that the district court abused its discretion by assigning him one felony point for each of his two terroristic-threats convictions in the following district court files: Kandiyohi County file number K8-01-369 and Yellow Medicine County file number K8-01-280. Padilla argues that his terroristic-threats conviction in file number K8-01-369 has decayed and the district court mistakenly did not consider this argument below. Instead, according to Padilla, the district court erroneously considered whether his

*other* terroristic-threats conviction (in file number K8-01-280) had decayed. The state argues that Padilla did not specify which terroristic-threats conviction he was challenging before the district court and therefore that his argument on appeal is not properly before us. In the alternative, the state contends that the challenged terroristic-threats conviction has not decayed.

Based on the record before us, it is not clear whether Padilla presented his terroristic-threats argument to the district court. But even if we assume that the argument is properly before us, Padilla has not shown that the challenged conviction has decayed. The sentencing guidelines prohibit a district court from including felonies that have decayed in a defendant's criminal-history score. Minn. Sent'g Guidelines, 2.B.1.c (2016). A felony has decayed "if a period of fifteen years has elapsed since the date of discharge from or expiration of the sentence to the date of the current offense." *Id.* The record shows that the challenged terroristic-threats sentence expired on December 24, 2002. Fifteen years after December 24, 2002 is December 24, 2017. The date of the current offense is July 22, 2017. Because the requisite 15 years had not elapsed by the date of the current offense, this conviction was properly included in Padilla's criminal-history score. *See id.* We therefore conclude that the district court did not abuse its discretion by assigning Padilla one felony point for each terroristic-threats conviction.

C. **The district court did not abuse its discretion by assigning Padilla one custody-status point.**

Padilla next contends that the district court improperly assigned him one custody-status point. Padilla asserts that 2019 changes to the sentencing guidelines apply

14

to this case and entitle him to a one-half-point reduction in his custody-status point. We disagree.

Even if we assume that the 2019 changes apply here, those changes would not result in the one-half-point reduction Padilla seeks. In relevant part, the 2019 sentencing guidelines direct district courts to "[a]ssign **one** custody status point when" an offender committed the felony at issue while on supervised released for a different felony conviction. Minn. Sent'g Guidelines 2.B.2.a(1)(iii), (2), (3)(ii) (Supp. 2019). Here, Padilla committed first-degree possession of a controlled substance, a felony offense, while on supervised release for several other felony convictions, namely first-degree assault, drive-by shooting of an occupied building, and drive-by shooting of an unoccupied building. Thus, even if Padilla had been sentenced under the 2019 guidelines, he nevertheless would have been assigned one custody status point. The district court did not abuse its discretion by assigning Padilla this point.

In sum, we discern no error in the district court's recalculation of Padilla's criminal-history score following his motion to correct his sentence. We therefore conclude that the district court did not abuse its discretion by partially denying that motion.

## II. The district court did not abuse its discretion by declining to reduce Padilla's sentence in this case based on time served in the drive-by-shooting case.

Finally, Padilla argues that the district court should have reduced his sentence for the drug offense in this case "[b]ecause Mr. Padilla served more time in [the drive-by-shooting case] than he should have" due to alleged sentencing errors. We are not persuaded.

Padilla has not demonstrated that he is entitled to the relief he seeks. To support his novel argument, Padilla relies on *State v. Kraulik*, No. A08-0438, 2009 WL 1047001 (Minn. App. Apr. 21, 2009). The *Kraulik* case is not on point. *Kraulik* involved the execution of a stayed sentence following a probation-revocation hearing where the appellant asked the district court to "take 'equity and fairness' into account and grant him credit for the 12 months that he had erroneously served on his 2003 conviction." 2009 WL 1047001, at *1. This court treated appellant's request as one for jail credit, which is based on equitable principles, but noted that it was "not a typical jail-credit situation." *Id.* Based on the unique facts of that case, this court determined that the district court should have used its equitable authority to grant appellant a downward sentencing departure. *Id.* By contrast, Padilla asked the district court to correct his sentence under rule 27.03, subdivision 9. When determining whether to correct a sentence under this rule, the district court may consider only whether the sentence is "authorized by law." *See* Minn. R. Crim. P. 27.03, subd. 9. Because a district court is afforded more discretion when exercising its equitable authority than when deciding whether to grant relief under rule 27.03, subdivision 9, this court's decision in *Kraulik* has no bearing on our review of the district court's rule-27.03 decision here. Moreover, *Kraulik* is a nonprecedential case and therefore is not binding on this court. Minn. R. Civ. App. P. 136.01, subd. 1(c). Padilla cites no binding or persuasive authority to show that he is entitled to a sentencing reduction in this case based on alleged sentencing errors in a different case.[4] We therefore conclude that

---

[4] The Minnesota Legislature recently enacted a law that allows prosecutors to "commence a proceeding to adjust the sentence of [an] individual at any time after the initial sentencing

16

the district court did not abuse its discretion by declining to reduce Padilla's sentence on that basis. *See Waters*, 13 N.W.2d at 464-65; *see also Midway Ctr. Assocs.*, 237 N.W.2d at 78 (quoting *Waters*).

**Affirmed.**

---

provided the prosecutor does not seek to increase the period of confinement or, if the individual is serving a stayed sentence, increase the period of supervision." Minn. Stat. § 609.133, subd. 2 (Supp. 2023); *see also* 2023 Minn. Laws ch. 52, art. 6, § 10, at 737-40. But this appeal does not arise from an action under section 609.133, subdivision 2, and Padilla does not argue that the statute applies here. We therefore express no opinion as to whether Padilla is entitled to relief under section 609.133, subdivision 2. *See Azure*, 700 N.W.2d at 447.