*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1760**

State of Minnesota,
Respondent,

vs.

Edin Gaspar Cruz Flores AKA Marcelino Rivera Rodriguez,
Appellant.

**Filed September 30, 2024**
**Affirmed**
**Reilly, Judge\***

Kandiyohi County District Court
File No. 34-CR-22-97

Keith Ellison, Attorney General, Lydia Villalva Lijó, Assistant Attorney General, St. Paul, Minnesota; and

Shane Baker, Kandiyohi County Attorney, Willmar, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Joseph McInnis, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bratvold, Presiding Judge; Johnson, Judge; and Reilly, Judge.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**REILLY**, Judge

Appellant Edin Gaspar Cruz Flores was convicted after a jury trial of nine counts of criminal sexual conduct involving two victims. On appeal, he argues that (1) the district court erred by admitting his taped confession to law enforcement because his *Miranda* waiver was not knowing and intelligent, (2) the district court erred in imposing sentences for multiple counts of first- and second-degree criminal sexual conduct committed as part of a single behavioral incident, and (3) the evidence is insufficient to sustain his conviction for first-degree criminal sexual conduct against S.C. because the state failed to prove that she was under 13. We affirm.

## FACTS

In early January 2022, M.F.C. and S.C. went to the Willmar Police Department to file a police report that, beginning when they were about 11 and 12 years old, Cruz Flores began to supply them alcohol and rape them. At the time they made the report, M.F.C. was 26 years old and S.C. was 25 years old. Cruz Flores is around 17 years older than M.F.C. and 18 years older than S.C.

On February 2, 2022, Cruz Flores was arrested on an outstanding warrant for a forgery charge. The following day, a detective interviewed Cruz Flores while he was still in custody. The detective began by reading Cruz Flores his *Miranda* rights. After being *Mirandized*, Cruz Flores agreed to talk to the detective. The detective then began the interview by stating that Cruz Flores was arrested on a warrant for forgery. For the first half hour, the detective questioned Cruz Flores regarding the forgery charge, other names

2

he had used, and addresses he had lived at. Around 28 minutes into the interview, the detective asked for a DNA sample, which Cruz Flores provided. Around 31 minutes, the detective began to question Cruz Flores regarding M.F.C. and S.C.'s reports. The entire interview lasted about 1.5 hours. Cruz Flores initially admitted he touched M.F.C. over her clothing on her breast and vaginal area. Later in the interview, he admitted he touched S.C. the same way. Cruz Flores first stated S.C. "was 15 or 16" but he was "not exactly sure." After further questioning, Cruz Flores admitted he had sex with both M.F.C. and S.C. He stated they were "around 16 or 15." After some back and forth, the detective asked Cruz Flores: "You had sex with them when they were 12 or 13 years old?" to which he replied "Yes, it's true. Yes."

The state charged Cruz Flores with one count of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct. The state later amended the complaint to include seven total counts and added two lesser-included offenses at trial.

Before trial, Cruz Flores moved to suppress his February 3, 2022, statements to the detective. The district court denied his motion to suppress, concluding that Cruz Flores "was given ample time and opportunity to assess and reassess his previous waiver as [the] [d]etective . . . slowly questioned him," that the detective "provided [Cruz Flores] with a flow of non-coercive information," and that none of Cruz Flores's "responses were born out of coercion, duress, or trickery." At trial, a video recording of the interview was played for the jury, over Cruz Flores's objection, and a partial transcript was also received into evidence.

M.F.C. testified at trial that when she was 11, Cruz Flores came to live with her family. Initially, he touched her breasts and vagina outside of her clothes. It progressed to where Cruz Flores would take his penis out and masturbate, and eventually Cruz Flores penetrated M.F.C.'s vagina with his penis. M.F.C. testified that she was 11 the first time M.F.C. penetrated her vagina with his penis. She testified that Cruz Flores gave her alcohol in order to take advantage of her. In 2008, M.F.C. told her fifth-grade teacher that Cruz Flores had assaulted her. The teacher reported this to the police. The police talked with Cruz Flores but when the police contacted M.F.C., she did not report the assault because she was afraid. M.F.C. also disclosed the assault to her father, but he "did not believe [M.F.C.]." Cruz Flores continued to live with M.F.C.'s family for some time. M.F.C. would sometimes drink alcohol with both Cruz Flores and S.C. On one such occasion, when S.C. went to the bathroom, Cruz Flores began to touch M.F.C. When M.F.C. later went to the bathroom, she told S.C. "don't let [Cruz Flores] touch you." S.C. told her that Cruz Flores was not touching her. M.F.C. testified that she thought she was 13 and S.C. was 12 at the time this occurred. M.F.C. testified that she never witnessed Cruz Flores touching S.C., and that S.C. never witnessed Cruz Flores touching her. Cruz Flores eventually moved out but continued to assault M.F.C. M.F.C. later became pregnant and had a child; Cruz Flores was the father.

S.C. also testified at trial. S.C. explained that she and M.F.C. were cousins, and M.F.C. and Cruz Flores were cousins, but she and Cruz Flores were unrelated. She testified that she "was 12 or 13" when she started "hanging out" with Cruz Flores. Cruz Flores began to touch her inappropriately when she was "12 or 13." She testified that Cruz Flores

4

brought her to his house, where they drank alcohol. It got late, and S.C. tried to leave, but Cruz Flores "led [her] to his bedroom" and got "on top of [S.C.]" He pulled down her pants and used his penis to penetrate her vagina. She testified this happened several times and Cruz Flores would always provide alcohol to her beforehand. She again testified that she was "[e]ither 12 or 13" and in seventh or eighth grade when the assaults began "somewhere between" "2008, 2009" in the summer or fall. S.C. testified that she was born in June 1996, and therefore would have been 12 until her birthday in June 2009.

Willmar Police Officer A.H. testified at trial. He testified that M.F.C. and S.C. came to the Willmar law enforcement center to make a report about Cruz Flores sexually assaulting them. He testified that "[S.C.] reported to me that when she was approximately 12 years old, she remembered that [Cruz Flores] . . . provided her with . . . alcohol . . . [and] sexually assault[ed] her and ha[d] vaginal intercourse with her." The prosecuting attorney followed up: "And how old did [S.C.] report she was at the time that this started?" to which A.H. responded "[S.C.] stated that the first assault occurred when she was approximately 12 years old." On redirect, the state clarified with A.H.:

> Prosecuting Attorney: Now, during the first interview with [S.C.], she reported that she was 12 years old during that incident; is that correct?
> A.H.: That's correct.
>
> Prosecuting Attorney: And then during her second interview with you she actually said she remembered a prior incident so it would have been before that when she was 12?
> A.H.: Yes.

Cruz Flores did not testify at trial. The jury found Cruz Flores guilty on all counts: counts 1, 3, and 4, for first-degree criminal sexual conduct; counts 2, 5, 6, and 7, for second-

5

degree criminal sexual conduct; count 8, third-degree criminal sexual conduct; and count 9, fourth-degree criminal sexual conduct. Cruz Flores was sentenced to 351 months in prison after the district court imposed an upward durational departure.

**DECISION**

## I. The district court did not err by not suppressing Cruz Flores's custodial interrogation.

Cruz Flores argues that the district court erred by failing to suppress his custodial interrogation.

"When reviewing a district court's pretrial order on a motion to suppress evidence, 'we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo.'" *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quoting *State v. Jordan*, 742 N.W.2d 149, 152 (Minn. 2007)). A district court's determination that a waiver of *Miranda* rights was knowing, voluntary, and intelligent is reviewed on appeal for clear error. *State v. Camacho*, 561 N.W.2d 160, 168 (Minn. 1997). "When an appellant contends that credible evidence supports a contrary finding, however, an appellate court will make a subjective factual inquiry to determine whether under the totality of the circumstances the waiver was valid." *Id.* at 169. "When an error implicates a constitutional right, we will award a new trial unless the error is harmless beyond a reasonable doubt. An error is harmless beyond a reasonable doubt if the jury's verdict was surely unattributable to the error." *State v. Davis*, 820 N.W.2d 525, 533 (Minn. 2012) (citation and quotation omitted); see also *State v. McInnis*, 962 N.W.2d 874,

886-90 (Minn. 2021) (applying harmless-beyond-a-reasonable-doubt standard to erroneously admitted confession in a stipulated-evidence trial).

Cruz Flores argues that his waiver was not knowing and intelligent because he was unaware of the subject of the interrogation and because the detective misled him that the questioning would be about the forgery case. The state argues that the detective was not required to tell Cruz Flores "the specific crime he is investigating" and did not mislead Cruz Flores.

When a criminal suspect undergoes custodial interrogation, the suspect must be informed of his right to remain silent and his right to counsel. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A suspect may waive the Fifth Amendment privilege against self-incrimination and right to counsel, but only if the waiver is knowing, intelligent, and voluntary. *Id.*; *State v. Fox*, 868 N.W.2d 206, 213 (Minn. 2015). The state has the burden of proving a valid waiver. *Fox,* 868 N.W.2d at 213. Ordinarily, the state satisfies its burden of proving a knowing, voluntary, and intelligent waiver of *Miranda* rights if it shows: (1) *Miranda* warnings were given, (2) the defendant stated that he or she understood those warnings, and (3) then the defendant gave a statement. *Camacho*, 561 N.W.2d at 168 (citing *State v. Linder*, 268 N.W.2d 734, 735 (Minn. 1978)).

The parties dispute whether Cruz Flores knew that the sexual assault investigation would be discussed when he waived his *Miranda* rights. Even if we assume he did not know that he would be questioned on the sexual assault allegations, we nevertheless conclude that his waiver was knowing and intelligent under Minnesota and U.S. Supreme Court caselaw.

7

Cruz Flores argues that his waiver was invalid under *Fox* and *State v. Beckman*, 354 N.W.2d 432, 436 (Minn. 1984) because "[the] detective misrepresented the scope of the questioning and [] Cruz Flores was totally unaware of the subject matter of the investigation." Cruz Flores asserts that *Beckman* "addressed the validity of a *Miranda* waiver when a defendant had no knowledge of the subject matter of the police questioning." In *Beckman*, law enforcement officers brought Beckman to the police department to "issu[e] a ticket for driving after revocation and for no front license plate." 354 N.W.2d at 436. Once there, police questioned him about that issue, but then also about a burglary and robbery. *Id.* The Supreme Court noted that "[t]here would be grave doubt that [Beckman's] *Miranda* waiver was valid," and "caution[ed] investigating officers to make clear to suspects at the time they are asked to waive their *Miranda* rights the nature of the crimes about which they will be questioned." *Id.* at 437. The supreme court concluded, however, that Beckman's waiver was valid because "at the outset of the interrogation officers told [Beckman] that they wanted to question him about other matters as well as about the revocation" and therefore he "was not 'totally unaware' of the offenses upon which the questioning was based." *Id.*

We disagree that *Beckman* addressed the validity of a *Miranda* waiver in which a defendant had no knowledge of the subject matter of police questioning. *Beckman* ruled on a set of facts where the defendant *did* know about the subject matter. Moreover, *Beckman* predated the U.S. Supreme Court's holding in *Colorado v. Spring*, 479 U.S. 564 (1987). There, agents from the Bureau of Alcohol, Tobacco, and Firearms (ATF) arrested Spring during an undercover purchase of stolen firearms. *Spring*, 479 U.S. at 566. The agents

8

brought Spring to an ATF office, read him his *Miranda* rights, and questioned him regarding the firearms transactions. *Id.* at 567. They then questioned him about whether he had ever shot someone, whether he had ever been to Colorado, and whether he had "shot a man named [victim] in Colorado and thrown his body into a snowbank." *Id.* The U.S. Supreme Court concluded that the ATF agents' "failure to inform him of the potential subjects of interrogation" did not render his waiver invalid when there was no coercion and the warning "ensure[d] that [he] [knew] that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Id.* at 574-75.[1]

After *Spring*, the Minnesota Supreme Court addressed the issue again in *Fox*. When interrogated, Fox began discussing facts related to the underlying crime "before a single question was asked of him." *Fox*, 868 N.W.2d at 215. The Minnesota Supreme court declined to "determine[] whether [its] decision in *Beckman* is good law in light of the United States Supreme Court's decision in *Spring*" because Fox "was not totally unaware of the topics upon which he was going to be questioned." *Id.*

In sum, both *Beckman* and *Fox* ruled on situations in which the defendants were aware of the scope of the investigation before waiving their *Miranda* rights. Neither ruled on facts like Cruz Flores's, where he did *not* know the subject or scope of the investigation at the time the *Miranda* warning was given, and therefore they are not dispositive here.

---

[1] Cruz Flores claims that in *Spring*, the Supreme Court "left open the question of whether misrepresentations by the police about scope of an interrogation could invalidate a *Miranda* waiver," citing footnote 8. But that footnote refers to an "affirmative misrepresentation," which is not what is alleged here. *Spring*, 479 U.S. at 576, n.8.

Thus, we rely on *Spring* to conclude that even if Cruz Flores was unaware of the scope of the investigation, law enforcement's failure to inform or clarify the scope did not render his waiver invalid where his waiver was in all other regards voluntary, knowing, and intelligent.

**II.    The district court did not err in entering a conviction and sentencing Cruz Flores for both counts 4 and 6.**

Cruz Flores argues that the district court erred by sentencing him separately for counts 4 and 6 because count 6 is a lesser-included offense of count 4 and occurred in the same behavioral incident. The state argues that the district court did not err "[b]ecause the conduct in counts 4 and 6 was not committed as part of the same behavioral incident." Specifically, it argues that the incidents of penetration and contact were "separated by time, location, those present, and by appellant's conduct."

An actor "may be convicted of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04m subd. 1 (2006). "[I]f a person's conduct constitutes more than one offense . . . , the person may be punished for only one of the offenses." Minn. Stat. § 609.035, subd. 1 (Supp. 2007). As a result, multiple sentences for multiple offenses committed as part of the same behavioral incident are prohibited. *State v. Barthman*, 938 N.W.2d 257, 265-66 (Minn. 2020). "Whether a defendant's offenses occurred as part of a single course of conduct is a mixed question of law and fact." *State v. Jones*, 848 N.W.2d 528, 533 (Minn. 2014). Appellate courts review the district court's finding of fact under a clearly erroneous standard, and its application of the law to those facts de novo. *Id.* To determine whether two or more offenses were committed during a single behavioral

incident, appellate courts examine two factors: (1) whether "the offenses occurred at substantially the same time and place," and (2) whether the conduct "was motivated by an effort to obtain a single criminal objective." *Barthman*, 938 N.W.2d at 265 (quotation omitted). When a district court imposes multiple sentences, "[t]he State bears the burden of proving, by a preponderance of the evidence, that a defendant's offenses were not part of a single behavioral incident." *State v. Bakken*, 883 N.W.2d 264, 270 (Minn. 2016).

Cruz Flores was convicted of count 4 for having multiple acts of sexual *penetration* with M.F.C. when she was under the age of 16 and the parties had a significant relationship. Cruz Flores was convicted of count 6 for having multiple acts of sexual *contact* with M.F.C. when she was under the age of 16 and the parties had a significant relationship. In a pre-sentencing order, the district court ordered that Cruz Flores be sentenced for counts 2, 4, and 6 involving M.F.C. It reasoned that "[w]hile Counts 4 and 6 involve the same date range, the testimony clearly also discussed incidents of sexual contact only which occurred while [S.C.] was also present on separate occasions with [M.F.C.]. As in *Barthman*, the court finds these separate acts as differing behavioral incidents."

The district court did not err in concluding that the acts of penetration and contact were distinct behavioral incidents. First, the offenses did not occur at substantially the same time and place. Rather, they were composed of several incidents spanning many years. In *Barthman*, the supreme court concluded that even though the victim could not pinpoint a time or place of the assaults, because she described two separate incidents—one where she was assaulted with a sex toy, and one without—the incidents did not occur at substantially the same time. *Barthman*, 938 N.W.2d at 266. Here, although there were overlaps, M.F.C.

11

provided testimony establishing specific occasions of contact without penetration that occurred while S.C. was present. The record therefore supports the district court's conclusion that Cruz Flores's penetration and contact of M.F.C. did not occur at substantially the same time or place.

Second, the different conduct Cruz Flores was convicted for was not "motivated by an effort to obtain a single criminal objective." *Cf. id.* at 265 (quotation omitted). Cruz Flores argues that the sexual penetration and the sexual contact were part of a common criminal objective because "the sexual contact against M.F.C. that constituted count 6 led directly to sexual penetration that constituted count 4." In *Barthman*, the Minnesota Supreme Court rejected Barthman's assertion that his single criminal objective was "sexual gratification," reasoning that "broad statements of criminal purpose do not unify separate acts into a single course of conduct." *Id.* at 267 (quotation omitted). It concluded that the two incidents described were not "in furtherance of, or incidental to, his successful completion of" each other. *Id.* "[E]ven assuming that Barthman committed each sexual act 'to satisfy his sexual urges, the mere fact that he committed multiple crimes over time for the same criminal objective does not mean he committed those crimes to attain a single criminal objective.'" *Id.* (quotation and emphases omitted). Here, M.F.C. testified about sexual contact that occurred before any penetration occurred. It is hard to see how these distinct acts were "in furtherance of" each other.

Because the acts were not committed as part of the same behavioral incident, the district court did not err in entering a conviction and sentencing Cruz Flores for both counts 4 and 6.

**III.** **The evidence is sufficient to sustain Cruz Flores's conviction for first- and second-degree criminal sexual conduct because the state proved S.C. was under 13 years old at the time of the offenses.**

Cruz Flores argues that the state failed to prove that S.C. was under 13 at the time of the offense because she testified that she was "[e]ither 12 or 13 years old" when the abuse started. He argues a circumstantial evidence test applies. The state argues that direct evidence supports the element because S.C. reported to A.H. that she was 12 years old when Cruz Flores began abusing her. Cruz Flores acknowledges that "in her first interview with [A.H.], S.C. stated that she was 12 years old when the abuse began." But he argues that A.H.'s testimony about S.C.'s prior statement was not substantive evidence admitted at trial and is not part of the circumstances proved. The state argues that A.H.'s testimony that S.C. previously stated she was 12 when the abuse started was admitted at trial as substantive evidence.

First, Cruz Flores argues that because the jury was instructed generally to consider prior inconsistent statements only to assess witness credibility, jurors could not have relied on the testimony. Second, Cruz Flores argues that the statement is not substantive evidence because "it contains an inconsistency that impacts the elements of a criminal charge." We conclude that Cruz Flores's arguments are not supported by the record. First, there is no record support that A.H.'s testimony was admitted only as a prior inconsistent statement. A.H. simply testified that S.C. previously reported she was 12 years old when the abuse began. No objections or motions were made. Second, the record does not suggest that the statement is inconsistent. A.H. and S.C. both testified at trial that she was 12 or 13, or about 12, when the abuse began. A.H.'s testimony that S.C. "reported that she was 12 years old"

13

is not inconsistent because 12 is consistent with "approximately 12" and also with "12 or 13."

Because A.H.'s testimony that S.C. initially reported she was 12 requires no inference to conclude that she was 12, it is direct evidence. *See State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (stating that direct evidence "is based on personal knowledge or observation and . . . proves a fact without inference or presumption" (quotation omitted)). When an element of an offense is supported by direct evidence, this court reviews whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict that they did. *State v. Horst*, 880 N.W.2d 24, 40 (Minn. 2016) (citing *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989)). The reviewing court must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). "[A] conviction can rest on the uncorroborated testimony of a single credible witness." *State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004). "[T]he task of weighing credibility [is] for the jury, not this court." *Id.* (quotation omitted). Both Cruz Flores and the state assert that A.H.'s testimony is the relevant evidence that S.C. was 12 at the time the abuse began. And this evidence was sufficient for the jury to conclude that the "under 13" element of the offense was met. Thus, we conclude the evidence is sufficient to sustain the convictions for first- and second-degree criminal sexual conduct as it pertains to S.C.

## IV. Cruz Flores is not entitled to relief for the pro se claims he raises.

Cruz Flores submitted a pro se brief, arguing that the state was not clear and convincing and lacked sufficient evidence and that M.F.C. and S.C.'s trial testimony

differed from their initial interviews. Cruz Flores's arguments consist of two sentences and include no analysis or citation to law. An assignment of error in a brief based on "mere assertion" and not supported by argument or authority is forfeited unless prejudicial error is obvious on mere inspection. *Schoepke v. Alexander Smith & Sons Carpet Co.*, 187 N.W.2d 133, 135 (Minn. 1971); *see State v. Andersen*, 871 N.W.2d 910, 915 (Minn. 2015) (applying this aspect of *Schoepke*); *Scheffler v. City of Anoka*, 890 N.W.2d 437, 451 (Minn. App. 2017) (same), *rev. denied* (Minn. Apr. 26, 2017); *see Ganguli v. Univ. of Minn.,* 512 N.W.2d 918, 919 n.1 (Minn. App. 1994) (same). Here, because the alleged errors are not obvious upon mere inspection, we decline to review his claims further.

**Affirmed.**